ST. LOUIS, I. M. & S. RY. CO. v. WEST BROS. et al.

(Court of Civil Appeals of Texas. San Antonio. June 11, 1913. On Motion for Rehearing June 28, 1913.)

1. REMOVAL OF CAUSES (§ 94*)—APPLICATION FOR REMOVAL—EFFECT.

Where the original petition, in an action against several defendants, was abandoned, and amended pleadings were filed, after the filing by one defendant of an application for removal to the federal court on the ground that the controversy was separable, and he filed a second application for removal on the filing of the amended petition, the application for removal must be considered in the light of the amended petition.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 178, 203; Dec. Dig. § 94.*]

2. COURTS (§ 97*)—CONTROLLING DECISIONS—DECISIONS OF FEDERAL SUPREME COURT.

The decisions of the federal Supreme Court on the questions of the construction and validity of contracts for interstate shipments are controlling on the state courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 329–333; Dec. Dig. § 97.*]

3. CARRIERS (§ 35*) — TRANSPORTATION OF LIVE STOCK—CONTRACTS—VALIDITY—"DISCRIMINATION."

A contract binding carriers of an interstate shipment of cattle to so handle them as to get them into market by a specified time and to feed and water them only once en route, so that they will take a heavy fill and weigh more at destination than if fed and watered more than once en route, is invalid as discriminatory, in violation of the Elkins Act (Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1911, p. 1309]), prohibiting "discrimination" between shippers.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 94; Dec. Dig. § 35.*

For other definitions, see Words and Phrases, vol. 3, p. 2099.]

4. REMOVAL OF CAUSES (§ 50*)—DIVERSITY OF CITIZENSHIP—SEPARABLE CONTROVERSY.

Where the petition, in an action against several carriers, alleged a breach by one carrier, a nonresident, of a parol contract, and averred facts showing a violation by the carriers of their common-law liability, the nonresident carrier was not entitled to a removal of the action to the federal court, on the ground that the controversy was separable.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 100; Dec. Dig. § 50.*]

5. CONTRACTS (§ 113*)—VALIDITY—INDUCING FRAUD—CARRIAGE OF LIVE STOCK.

A contract binding a carrier of cattle transported for sale at destination to transport them with such speed as to require but one feeding and watering en route, so as to make the cattle in such condition at destination that they will inflate themselves with water and increase their weight when offered for sale, is void as fraudulent on the rights of buyers, and cannot be made the basis for damages because breached.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 521–541; Dec. Dig. § 113.*]

#### On Motion for Rehearing.

6. APPEAL AND ERROR (§ 1173*)—DISPOSITION OF CASE ON APPEAL—AFFIRMANCE OF JUDGMENT.

Where plaintiff, suing a defendant and several codefendants, desired that the judgment

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes.

for the codefendants should not be disturbed, the court on the appeal of defendant will affirm the judgment for codefendants.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4562–4572, 4656; Dec. Dig. § 1173.*]

7. APPEAL AND ERROR (§ 758*) — QUESTIONS REVIEWABLE — BRIEF OF APPELLANT — ASSIGNMENTS OF ERROR.

Under Courts of Civil Appeals Rule 29 (142 S. W. xii), requiring appellant to file a brief of the points relied on, but not requiring the assignments of error to be presented in the order in which they appear in the original assignment, appellant may in his brief disregard the numbers of the assignments of error in the record, and give the assignments new numbers, numbered from the first to the last in their consecutive order.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3093; Dec. Dig. § 758.*]

8. COURTS (§ 79*)—RULES OF COURT—VALIDITY.

The Supreme Court may not, by a rule of court, set aside statutes.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 275; Dec. Dig. § 79.*]

9. APPEAL AND ERROR (§ 1140*)—DISPOSITION OF CASE ON APPEAL—REMITTITUR.

Where the verdict is wholly based on a void oral contract, a remittitur of a part will not cure the error therein.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4462–4476; Dec. Dig. § 1140.*]

Appeal from District Court, Uvalde County; R. H. Burney, Judge.

Action by West Bros. against the St. Louis, Iron Mountain & Southern Railway Company and others. From a judgment for plaintiff against defendant named, it appeals. Reversed and remanded.

See, also, 152 S. W. 181.

Guinn & McNeill, of San Antonio, Baker, Botts, Parker & Garwood, of Houston, G. B. Fenley, of Uvalde, and W. B. Teagarden, of San Antonio, for appellant. Martin & Martin and L. Old, all of Uvalde, Wilson, Dabney & King, of Houston, and W. L. Hall, of Dallas, for appellees.

FLY, C. J. This cause was instituted by West Bros. to recover damages arising from delay in the shipment of certain cattle from Uvalde, Tex., to the National Stock Yards, Ill., the defendants in the trial court being the Galveston, Harrisburg & San Antonio Railway Company, International & Great Northern Railroad Company, Texas & Pacific Railway Company, St. Louis, Iron Mountain & Southern Railway Company, and T. J. Freeman, receiver of the International & Great Northern Railroad Company. It was alleged in the second amended petition, upon which the cause was tried, that, West Bros. desiring that their 277 cattle be shipped from Uvalde, Tex., to National Stock Yards, Ill., the Galveston, Harrisburg & San Antonio Railway Company, being the initial carrier, made a verbal contract with an agent of appellant, by which he agreed, in consideration of the routing of the cattle so that they would pass over the Galveston, Harrisburg & San Antonio Railway Company's line to San Antonio; thence over the International & Great Northern Railroad line to Longview; thence over the line of the Texas & Pacific Railway Company to Texarkana; thence over the lines of appellant to the National Stock Yards, Ill.—that appellant would transport the cattle in such time that they would be unloaded and fed once in transit, and with such dispatch that they would be delivered at point of destination in time to be sold on Tuesday, June 6, 1911. The following allegation is also found in the petition: "Plaintiff says that at the time that they made the said contract, as aforesaid, he informed the said agent of the defendant St. Louis, Iron Mountain & Southern Railroad Company, D. C. Smith, that plaintiff desired the said cattle transported to destination on one feed, for the reason that cattle shipped from Uvalde, Tex., to National Stock Yards, Ill., and fed only once en route would take a heavy fill, and would weigh more than if fed and watered more than once en route, that said cattle if fed and watered more than once would not take any fill at destination, and would weigh much less than if fed only once, and would weigh in the neighborhood of 50 pounds less per head, if they were fed and watered twice in transit, than if watered once, and that Tuesday of each week was the best market day at destination; and that if plaintiffs' cattle did not arrive at said market on Tuesday in time for market that they would bring plaintiff much less than if they had to be sold on any other day, and that he wished them to go through by said day, Tuesday, June 6th, in time to be sold, so that they might be on said market on said day, and also that they would not be delayed en route, and thereby lose in flesh and become of poor appearance; and plaintiff says that the said contract was so made between plaintiff and the said defendant St. Louis, Iron Mountain & Southern Railroad Company by and through its live stock agent, as aforesaid, was made with full knowledge of all the facts, and of the damage that plaintiff would suffer, as aforesaid, by reason of a failure to perform said contract to place said cattle on market on said day, Tuesday, June 6, 1911, and feeding them more than once en route." Appellant sought to remove the cause to the "District Court of the United States for the Western District of Texas, at Del Rio," alleging diverse citizenship, and that the matter in controversy exceeded the sum of $3,000, and also filed its bond for removal. The petition for removal was overruled, and upon a trial of the cause by a jury a verdict was returned against appellant for $1,740.74, and in favor of the other railway companies, and from the judg-

ment thereon rendered this appeal has been perfected.

[1] While the original petition was in effect, and had not been set aside by amendments, appellant sought a removal to the federal court, and after the second amended petition had been filed a second motion to remove was made. The first and second assignments of error, respectively, complain of the refusal to remove under each motion. The first application for removal was on the ground of diverse citizenship and severableness of the claim against appellant from those against the other railways, and the claim against the initial carrier under the Carmack amendment. In the second motion there is no distinct allegation that the claim against appellant is severable from that of the other defendants. The only mention made of that matter is that the second amended original petition stated "more distinctly a separable cause of action or controversy than was set out in their pleadings when said first application for removal was refused by this court." The merit, if any, in the application for removal must stand or fall on the allegations of the second application for removal, under the allegations of the second amended original petition. When the original petition was abandoned and amended, pleadings were filed, and appellant made a second application thereunder, it must be considered in the light of the second amended pleading. The action of the court under the original petition cannot avail appellant after a second application was filed by it under other pleadings. It may be said, however, that under the allegations of the original petition the cause against appellant was not severable from that against the other defendants. Nor do we think the legal part of the action against appellant, as set forth in the second amended petition, was separable from that against the other railway companies.

[2, 3] The oral contract alleged in the amended petition was one made for the regular joint rates, but one which gave the shippers an advantage over other shippers. It was an agreement to handle the cattle so as to get them into the market by a certain time, in a way that was not used in regard to other cattle, and the action was one for a breach of that oral contract, which was one, not to carry the cattle within a reasonable time and deliver them at the point of destination, but it was a contract to carry them within a particular time, and to feed in a particular way, for a particular purpose. This is an interstate shipment, and in regard to such shipments the decisions of the Supreme Court of the United States must have a potent, if not controlling, influence.

In a case decided by the Supreme Court, in 1911 (Chicago & A. R. Co. v. Kirby, 225 U. S. 155, 164, 32 Sup. Ct. 648, 650 [56 L. Ed. 1033]), in which the facts are quite similar to those in this case, the statute, as to discrimination, of February 19, 1903, known as the Elkins Act (U. S. Comp. St. Supp. 1911, p. 1309), was copied, and it was held: "The implied agreement of a common carrier is to carry safely and deliver at destination within a reasonable time. It is otherwise when the action is for a breach of a contract to carry within a particular time, or to make a particular connection, or to carry by a particular train. The railroad company, by its contract, became liable for the consequence of a failure to transport according to its terms. Evidence of diligence would not excuse. If the action had been for the common-law carrier liability, evidence that there had been no unreasonable delay would be an answer. But the company, by entering into an agreement for expediting the shipment, came under a liability different and more burdensome than would exist to a shipper who made no such special contract. * * * The shipper, it is also plain, was contracting for an advantage which was not extended to all others, both in the undertaking to carry so as to give him a particular expedited service, a remedy for delay not due to negligence. An advantage accorded by special agreement which affects the value of the service to the shipper and its cost to the carrier should be published in the tariffs, and for a breach of such a contract, relief will be denied, because its allowance without such publication is a violation of the act. It is also illegal because it is an undue advantage in that it is not one open to all others in the same situation."

In this case a larger portion of the petition, upon which the cause was tried, is devoted to the oral contract of appellees West Bros. with appellant, which bound the carrier, not only to transport certain cattle from Uvalde, Tex., to National Stock Yards, Ill., and deliver them in good condition, and to deliver the cattle at a certain time, on a certain date, but also bound appellant not to water and feed the cattle but once en route, in order that they might be very thirsty and hungry, so that they would imbibe large quantities of water just before being sold, and each beef thereby gain 50 pounds, and the "Watered Stock" be unloaded on the market of the National Stock Yards. Under the authority herein cited the oral contract, in so far as it contemplated service not extended to every one, was discriminatory and in violation of the Elkins Act, which condemns any discrimination in respect of the transportation of any interstate or foreign commerce by any common carrier "whereby any such property shall, by any device whatever, be transported at a less rate than that named in the tariffs published and filed by such carrier, as is required by said act to regulate commerce and the acts amendatory thereto, or whereby any other advan-

tage is given or discrimination is practiced." Undoubtedly the oral contract relied on in this case gave an advantage not usually extended to shippers, and a discrimination was thereby practiced.

The court placed the right to recover in the general charge on the oral contract, and only on that particular part of it relating to the agreement to deliver the cattle at a certain time and to feed and water them only once on the way, and it was made a ground for damages if the cattle were fed twice, so that they would not readily "fill" with water when they reached destination. No grounds of negligence were submitted, the sole grounds of recovery being a breach of the oral contract, and, there being no oral contract with the other carriers at the instance and request of West Bros., a verdict in their behalf was instructed by the court. West Bros. sought to present several items of negligence, but the cause was tried by the court on the theory of a breach of the oral contract. Special charges were asked by West Bros. as to a breach of the oral contract, and were given by the court.

[4] If the theory upon which this cause was tried in the lower court be the true one, then the cause as to appellant was separable from that as to the other carriers, and the cause should have been removed to the federal court, but there were charges of negligence against appellant, and its common-law liability might be invoked, and that was so intermingled and mixed with that of the other carriers that the causes of action were not separable. The pleadings stripped of that portion in regard to the oral contract still left a case as against appellant for negligence, and the cause for the purposes of removal to the federal court should be viewed as though the oral contract had not been pleaded.

The oral contract might be utilized in this case, perhaps, for one purpose alone, which would be to show notice to appellant that it was desired that the cattle should reach the market at a certain time for a certain purpose, and thereby lay the basis for special damages, if the cattle were negligently transported, and thereby prevented from reaching the point of destination in time for the market desired. If the cattle were sold at a certain price on condition that they were to be delivered on a certain date, and appellant negligently failed to deliver them on that date, and appellees West Bros. thereby sustained damages, they might recover such damages. Or if there were circumstances indicating that the market would be higher on a certain day than on the succeeding days, and the carrier was notified of the necessity of reaching the market on that certain day, and by negligence failed to transport the cattle so as to have them reach the market on that day, damages might be recovered.

159 S.W.—10

[5] There is no allegation tending to show either of these matters, however; the only complaint seeming to be that the cattle were not transported fast enough to avoid a second stop for feeding and watering, which second feeding and watering prevented the cattle from carrying to their destination a thirst that would cause them to inflate themselves with water so as to increase their weight and consequent value. Whatever may have been the custom as to filling the cattle with water just before a sale, it is a fraud upon the rights of the buyers that cannot be tolerated as a basis for damages in a court of justice. The railroad company cannot be condemned to pay damages because it acted in such a way, whether designedly or not, as to prevent a fraud upon the rights of others, and a failure to carry out a contract to perpetrate such fraud will not be allowed to be made a basis for damages.

The first, second, and third special exceptions to the second amended petition should have been sustained. The petition was not only complicated and unnecessarily verbose, but it based a recovery largely upon the terms of the oral contract, and largely upon that part of it relating to "filling" the cattle with water. The third, fourth, and fifth assignments of error are therefore sustained. The petition should be drawn in the ordinary manner, setting forth the negligence of the railway companies in transporting the cattle to the place of destination and the damages resulting to the shippers therefrom.

The sixth assignment of error is overruled. The seventh, eighth, and ninth assignments, containing matters which will not probably arise on another trial, need not be considered. The tenth and eleventh assignments are overruled.

The twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth assignments are based on bills of exception that were not filed in time, and they cannot be considered.

The points sought to be raised in the remaining assignments of error either have been fully considered in connection with other assignments, or are such as will not arise on another trial, except those setting up error as to the other carriers, which are sustained. There was some evidence as to the negligence of the other carriers that should have gone to the jury, but everything was abandoned for the oral contract with appellant.

The judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

[6] Appellees say, "The court erred in its opinion, in holding that the peremptory instructions in favor of the Galveston, Harrisburg & San Antonio, T. J. Freeman, and International & Great Northern should not have been given;" and, as appellees desire that the

judgment in their favor should not be disturbed, the motion for rehearing of the Galveston, Harrisburg & San Antonio Railway Company, the International & Great Northern Railroad Company, and T. J. Freeman, receiver, is granted, and the judgment will be affirmed as to them.

[7] In the brief of appellant the numbers of the assignments of error in the record are discarded and new numbers given, and they are "numbered from the first to the last in their consecutive order." Rule 29 for Courts of Civil Appeals (142 S. W. xii). By that rule in regard to assignments of error "it is not required that they shall be presented in the order in which they appear in the original assignment of errors filed in the office of the clerk of the trial court, and the numbers of such original assignments may be discarded." The provisions of that rule were strictly followed by appellant in briefing its case; and, if we had ever felt disposed to disregard assignments of error because not numbered consecutively, which we have not, we could not have justified such a course under the provisions of that rule. This is said in deference to a request that we give our views on the subject.

[8] The new rule requiring reference to the motion for a new trial in assignments of error had been in effect only a few weeks when this cause was tried, and this court did not feel called upon to enforce it until such time that the rules were published and became generally known. The rules were not published in any authoritative form, that was generally known among attorneys, until about April 15, 1912, when they were published in 142 Southwestern Reporter. That was just a few days before this cause was tried. The Supreme Court cannot set aside statutes by rules, and that court has decided that objections to charges shall not be included in motions for new trials. Railway v. Beasley (Sup.) 155 S. W. 183. The assignments in appellant's brief, based on charges given, were sufficient to raise the question discussed in our original opinion.

[9] We adhere to the opinion that the court in the general charge presented the cause on the verbal contract alone, and the special charges given were made applicable only in case the jury found there was no verbal contract. It is an admission that the jury found there was an oral contract, when appellees offer to remit that part of the verdict relating to damages sustained by a failure to have the cattle in condition to fill with water prior to sale. The verdict was necessarily based on damages arising from a breach of the oral contract, which kind of contract has been declared illegal by the Supreme Court of the United States, as is indicated in our former opinion. The whole of the verdict being based on the oral contract, a remittitur of the part found for the "fill," which was not given the cattle, would not cure the verdict.

There was no charge made in our former opinion of conscious fraud upon the part of appellees in entering into the oral contract with appellant as to the water "fill" of the cattle. The evidence fails to show any attempt or desire upon the part of appellees to defraud any one, and the court merely declared that it would not enforce a contract which would have a tendency to perpetrate a fraud. Independent of any intention or desire to defraud any one, the terms of the contract would in law amount to a fraud. If it be a custom to keep cattle from water or food for a certain time, and then have them to "fill" themselves just before a sale, it is a "custom better kept in the breach than in the performance"; and while it might be that, being done with the knowledge of the buyer, he would have no cause of complaint, yet a contract with a railroad company to assist in the watering process could not be enforced.

The motion of appellees is overruled.