# CHICAGO & ALTON RAILROAD COMPANY v. KIRBY.

### ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 226. Argued April 25, 1912.—Decided May 27, 1912.

The implied agreement of a common carrier is to carry safely and deliver at destination within a proper time; evidence of diligence and no unreasonable delay excuses.

A carrier who agrees to expedite assumes a more burdensome liability and can exact a higher rate than where mere carrier's liability exists.

An interstate carrier can assume an extra liability for expediting, provided it makes and publishes a rate therefor and opens it to all.

To agree with a particular shipper to expedite a shipment at regular rates, where no rate has been published for special expediting, is a discrimination and as such a violation of the Elkins Act of February 19, 1903, 32 Stat. 847, c. 708, and relief on the contract will be denied.

The broad purpose of the Commerce Act to compel the establishment of reasonable rates and uniform application will not be defeated by sanctioning special contracts giving special advantages to particular shippers.

To guarantee a particular connection and transportation by a particular train amounts to giving a preference when not open to all and provided for in the published tariffs, and under the Elkins act is an illegal discrimination.

A shipper is presumed to know what the published rates are, and if they do not contain provisions for the special service guaranteed to him he must be taken as having contracted for a rate discriminatory in his favor.

Where plaintiff sues only on a special contract for prompt delivery by specified train, and there is no count for negligence as a carrier only, his claim for damages based on such negligence is not presented, and cannot be considered, on the record.

242 Illinois, 418, reversed.

THE facts, which involve the validity under the Elkins Act of a special contract for prompt delivery of goods by an interstate carrier, are stated in the opinion.

*Mr. Garrard B. Winston* and *Mr. William Patton*, with whom *Mr. Silas H. Strawn* was on the brief, for plaintiff in error:

The guarantee of special delivery upon which alone this suit was brought is an unlawful discrimination, and, therefore, void. *New Haven R. R. Co.* v. *Int. Com. Comm.*, 200 U. S. 361, 391.

The case was brought in assumpsit, not upon the common-law obligation of the railroad to carry within a reasonable time without negligent delay, but upon a special contract of guarantee to connect Kirby's car of horses with the "Horse Special" of the Michigan Central Railroad Company. *Armour Packing Co.* v. *United States*, 209 U. S. 56, 80.

The contract set out in the declaration being for a special service not noted in, but on the contrary prohibited by, the published tariffs, even if made, was void, as being in violation of the sections of the Interstate Commerce Act prohibiting discrimination, and no recovery can be had thereon. *Tex. & Pac. Ry. Co.* v. *Cotton Oil Co.*, 204 U. S. 439.

No service, privilege or facility may be extended to a shipper by a carrier which is not provided for and set out in the filed and published tariff.

The facility and service of specially expedited transportation, or transportation by a particular connection or train, is such that it requires publication to be lawful. Barnes on Interstate Transp., § 415; Elliott on R. R. (2d ed.), § 1684; *Shiel* v. *I. C. R. Co.*, 12 I. C. C. Rep. 211; *Diamond M. Co.* v. *B. & M. R. Co.*, 9 I. C. C. Rep. 311; *St. L., H. & G. Co.* v. *M. & O. R. Co.*, 11 I. C. C. Rep. 90; *Re Rates and Practices of M. & O. R.*, 9 I. C. C. Rep. 373, 380; *Re Rates on Cotton*, 8 I. C. C. Rep. 121; *Com. Club of Duluth* v. *N. P. R. Co.*, 13 I. C. C. Rep. 288; *Victor Fuel Co.* v. *A., T. & S. F. R. Co.*, 14 I. C. C. Rep. 119; *K. C. Hay Co.* v. *St. L. & S. F. R. Co.*, 14 I. C. C. Rep.

631; *Follmer & Co.* v. *G. N. R. Co.*, 15 I. C. C. Rep. 33; *Nat. L. Co.* v. *S. P. L. A. & S. L. R. Co.*, 15 I. C. C. Rep. 434; *Barrett Mfg. Co.* v. *Cent. R. Co.*, 17 I. C. C. Rep. 464; *Armour Car Lines* v. *So. Pac. R. Co.*, 17 I. C. C. Rep. 461; Beale & Wyman, R. R. Rate Reg:, § 748.

The giving of a greater service in consideration of the tariff rate than is noted in the tariff is unlawful. See the Hepburn Act of 1906, which provides specifically against the very thing which the Commission had already provided against by construction of the act before that amendment. *Tex. & Pac. Ry. Co.* v. *Cotton Oil Co.*, 204 U. S. 447.

The Alton had complied in every respect with the provisions of the act with reference to filing and publishing its joint tariffs.

These tariffs consisted of three documents, all of which must be construed together to arrive at the rate, and the service to be given for that rate, viz., the Official Classification, the Joint Interstate Tariff, and the List of Stations Taking Percentage Rate Bases.

These documents must be read together to arrive at the rate and service to be performed for the rate. *Man. Ins. Co.* v. *Erie & W. T. Co.*, 75 N. W. Rep. 62.

The classification sheet is binding on both carrier and shipper. *Smith* v. *Gt. N. Ry. Co.*, 107 N. W. Rep. 56.

The elements of classification are those that "affect either the cost or risk of carriage to the carrier, or the value of carriage to the shipper."

So the elements must necessarily be important which impose a greater degree of care on the carrier. Beale & Wyman, R. R. Rate Reg., § 586; *Millinery Jobbers' Asso.* v. *Am. Exp. Co.*, 20 I. C. C. Rep. 498.

The contract for the shipment of the horses was that implied by the law from the rate quoted, and no other condition or term could be added to that contract in consideration of that rate, and hence Kirby cannot re-

cover. *Smith* v. *Great Northern R. Co.* (N. Dak.), 107 N. W. Rep. 56.

If the rate is duly published and thus called to the attention of shippers and consignees, they cannot depend for the lawful rate or charge on what may be quoted by the carrier's agent, but must be guided by the published tariffs themselves. *Suffern* v. *I. D. & W. R.*, 7 I. C. C. Rep. 185; *So. Ry.* v. *Harrison*, 119 Alabama, 539; overruling *M. & O. R.* v. *Dismukes*, 94 Alabama, 131; *Kinnavey* v. *Term. Asso.*, 81 Fed. Rep. 802; *B. & O.* v. *Hamburger*, 155 Fed. Rep. 849. See also *Man. Ins. Co.* v. *Erie & W. T. Co.*, 75 N. W. Rep. 62; *Church* v. *Minn. &c. R. Co.*, 14 So. Dak. 443.

The shipper is presumed to know, upon proof of the due filing and publication of the schedules, that they were in existence, open for his inspection. 16 Am. & Eng. Ency. (2d ed.), 161; *Union Pac. R. Co.* v. *Goodridge*, 149 U. S. 680, 690, etc.; *Gulf &c. R. Co.* v. *Hefley*, 158 U. S. 98; *Tex. & P. R. Co.* v. *Cotton O. Co.*, 204 U. S. 426, 439; *Armour P. Co.* v. *United States*, 209 U. S. 56, 72, 80, 81; *Tex. & P. R. Co.* v. *Mugg*, 202 U. S. 242; *L. & N. R. Co.* v. *Mottley*, 219 U. S. 467, 476.

A contract to perform an additional and special service for a shipper for the regular schedule rate is a discrimination in his favor as completely as if he were given the regular schedule service for a lower rate than the tariff rate, or for a different compensation. *Wight* v. *United States*, 167 U. S. 512; *Railroad Co.* v. *Mottley*, 219 U. S. 467.

No action can be maintained in which the plaintiff, to make out his case, must necessarily invoke aid from an illegal demand or contract.

For a distinction between the cases in which a contract in contravention of a statute can be enforced and when it cannot, see *Connolly* v. *U. S. P. Co.*, 184 U. S. 540; *Miller* v. *Ammon*, 145 U. S. 421; *C. & O. R. R. Co.* v. *Maysville B.*

*Co.*, 116 S. W. Rep. 1183; *Gerber* v. *Wabash R. Co.*, 63 Mo. App. 145.

Where the action is to affirm a contract made in violation of the Interstate Commerce Act, and to recover for a breach thereof, the court will deny any remedy. *R. & G. R. Co.* v. *Swanson*, 39 L. R. A. 275; *B. & O. R. Co.* v. *Hamburger*, 155 Fed. Rep. 849; *S. F. & W. Ry. Co.* v. *Bundick*, 21 S. E. Rep. 995. See also *C. & D. R. Co.* v. *Maysville B. Co.*, 116 S. W. Rep. 1183, 1185, 1186.

The only contract authorized by the rate paid was for liability subject to official classification, i. e., limited to $100 per animal, or $1,200 per carload. Beale & Wyman, R. R. Rate Reg., §§ 590 *et seq.*, 926; 17 Am. & Eng. Ency. (2d ed.), 133.

Carriers may make their rates depend on the value of the animals given by the shipper. *Hart* v. *Pa. R. R. Co.*, 112 U. S. 331; *Duntley* v. *B. & M. R. Co.*, 66 N. H. 263; 20 Atl. Rep. 327; *Squire* v. *N. Y. Cent. R. Co.*, 98 Massachusetts, 245; *T. & P. R. Co.* v. *Abilene C. O. Co.*, 204 U. S. 439.

Neither can claim more than grows out of the payment of the rate, which has annexed to it a valuation basis. *Mannheim Ins. Co.* v. *E. & W. T. Co.*, 75 N. W. Rep. 602.

The question was not raised or passed upon in the case of *Penn. R. Co.* v. *Hughes*, 191 U. S. 477.

This rate, so imposed, cannot be departed from until changed by the legal method. *Poor Grain Co.* v. *C., B. & Q. R. Co.*, 12 I. C. C. Rep. 418.

There was an erroneous construction and application of Federal cases by the Supreme Court of Illinois.

*Mr. Albert Salzenstein,* with whom *Mr. James M. Graham* was on the brief, for defendant in error:

There was no unlawful discrimination under the Interstate Commerce Act. *Southern Pacific Co.* v. *Int. Com. Comm.*, 200 U. S. 585, does not deny the right of common

carriers to adopt a rule under which the right of routing beyond its own terminal is reserved to the initial carrier, as the condition of guaranteeing the through rates of the shipper.

The shipper having the right to use the Horse Special in shipping had the right to select the place he desired to connect with it, and in according him that right no privilege or preference of any kind was given him, but he was given what he or any shipper had a right to demand.

This being true it cannot be said that if the carrier agrees with such shipper to handle his shipment so as to connect with the Horse Special at such place selected by him, such agreement constitutes a contract prohibited by the Interstate Commerce Act.

There was nothing in this arrangement which in any way violated either the spirit or letter of the Interstate Commerce Act. *Foster* v. *Cleveland, C., C. & St. L. Ry. Co.*, 56 Fed. Rep. 434; *Texas & P. R. Co.* v. *Int. Com. Comm.*, 162 U. S. 197; *Int. Com. Comm.* v. *B. & O. Ry. Co.*, 43 Fed. Rep. 37, aff'd, 145 U. S. 263. The language of this case is quoted with approval and applied in subsequent cases. *Cincinnati, N. O. & T. P. R. Co.* v. *Int. Com. Comm.*, 162 U. S. 197; *Int. Com. Comm.* v. *Cincinnati &c. R. Co.*, 167 U. S. 479, 493; *Int. Com. Comm.* v. *Alabama Midland R. Co.*, 168 U. S. 144, 165; *Southern Pacific Co.* v. *Int. Com. Comm.*, 200 U. S. 536, 554; *Int. Com. Comm.* v. *Chicago, G. W. R. Co.*, 209 U. S. 108, 119; *Gamble-Robinson Com. Co.* v. *C. & N. W. Ry. Co.*, 94 C. C. A. 217; 168 Fed. Rep. 16; *United States* v. *Oregon R. & N. Co.*, 159 Fed. Rep. 975; *Int. Com. Comm.* v. *C. G. N. Ry. Co.*, 141 Fed. Rep. 1003; Hutchinson on Carriers (3d ed.), § 538.

If the contract had violated the Interstate Commerce Act the right to recover damages occasioned by the neglect and failure of the railroad to notify the Michigan Central in reasonable time to provide for the connection,

would still exist. *Merchants' Cotton Press Co.* v. *Insurance Co. of N. A.*, 91 Tennessee, 538; *S. C.*, 151 U. S. 368; *Central of Georgia* v. *Sim* (Ala.), 53 So. Rep. 826; *Standard Oil Co.* v. *United States*, 164 Fed. Rep. 376.

The general rule that an illegal contract is void and unenforcible is qualified by the exception that where a contract is not evil in itself and its invalidity is not denounced as a penalty by the express terms or by rational implication from the language of the statute which it violates, and that statute prescribes other specific penalties, it is not the province of the courts to do so, and they will not thus affix an additional penalty not directed by the law-making power. *Dunlap* v. *Mercer*, 156 Fed. Rep. 545, 551; *Logan Bank* v. *Townsend*, 139 U. S. 67; *Fritts* v. *Palmer*, 132 U. S. 282; *Xenia Bank* v *Stewart*, 107 U. S. 676; *Bank* v. *Mathews*, 98 U. S. 621; *Fackler* v. *Ford*, 24 How. 322; *Harris* v. *Runnels*, 12 How. 79; *People* v. *Rose*, 219 Illinois, 46, 63; *Bea* v. *People*, 101 Ill. App. 132; *Pangborne* v. *Westlake*, 36 Iowa, 546; *Wenninger* v. *Mitchell*, 139 Mo. App. 420; *Hobbs* v. *Boatright*, 195 Missouri, 663; *Duval* v. *Wellman*, 124 N. Y. 156; *Mitchner* v. *Watts* (Ind.), 96 N. E. Rep. 127; *Brady* v. *Central Western R. Co.* (Neb.), 130 N. W. Rep. 575; 9 Cyc. 550.

There is nothing in the holding of the Illinois courts that the limitation of recovery to $100 for each animal was not binding, that in any-way conflicts with any provisions of the Interstate Commerce Act.

In Illinois, the law is well established that a carrier cannot limit its common-law liabilities unless the shipper knowingly assented and agreed to such limitation, and whether there was such assent or not, is a question of fact. *Chicago & Northwestern Railway Co.* v. *Calumet Stock Farm*, 194 Illinois, 9; *C., C., C. & St. L. Ry, Co.* v. *Patton*, 203 Illinois, 376; *Wabash Railroad Co.* y. *Thomas*, 222 Illinois, 337. See also *Richmond A. R. Co.* v. *Patterson T. Co.*, 169 U. S. 311; *Latta* v. *Chicago, St. P. & M. O. Ry.*

*Co.*, 172 Fed. Rep. 850; 97 C. C. A. 198; *Cranmer* v. *C. R. I. & P. Ry. Co.* (Ia.), 133 N. W. Rep. 387; *L. & N. R. Co.* v. *Warfield*, 6 Ga. App. 550; *Kissinger* v. *Fitzgerald*, 152 N. Car. 247.

MR. JUSTICE LURTON delivered the opinion of the court.

Action in assumpsit to recover damages for the breach of a special contract for the shipment of a carload of high-grade horses from Springfield, Illinois, to New York city. There was a jury, verdict and judgment, which was affirmed by the Supreme Court of Illinois. The facts essential to be here stated are these: Kirby was engaged in developing high-grade horses, and desired to send a carload to be sold at a public sale to be held in Madison Square Garden, New York city. Several routes were available, and the published live-stock rates for carload shipments were the same by each route. It was, however, desirable to send them by the route which would insure their arrival in the shortest time after delivery to the carrier.

The declaration in substance avers that the plaintiff in error knowing the anxiety of the shipper for quick transportation, and that the horses were to enter the horse sale to be held late in the month, did, on January 24, 1906, contract and agree to carry a car, rented by defendant in error, loaded with horses, for the consideration of $170.60, over its own rails from Springfield to Joliet, Illinois, and there deliver so that it would be carried by a fast stock train known as the "Horse Special," over the M. C. Railroad, through to New York. Said Horse Special was run but three times each week, and was due to leave Joliet the following morning. It is then alleged that the defendant in error, as directed by the railroad company, delivered and loaded his horses on the afternoon of the twenty-fourth; but that the company did not promptly carry and deliver the same to the said fast stock train on

the morning of the twenty-fifth, as it had guaranteed to do, having failed to make connection with that train; and, that, as a consequence, the car was forwarded by a later and much slower train, and the horses were delivered in New York forty-eight hours after they would have arrived had they been carried by the Horse Special, as the plaintiff in error undertook. As a result of this prolonged transportation, the horses did not reach New York in time to be put in proper condition for the horse sale, whereby the defendant in error sustained damages, aggregating several thousand dollars.

The plaintiff in error pleaded the general issue and under this presented certain defenses which we shall pass by, as not constituting questions of law or fact open to review upon a writ of error to a state court.

The single Federal question arises upon the validity of the contract to so carry these horses as to deliver them at Joliet to be carried through to New York by the Horse Special, leaving Joliet on the twenty-fifth of January.

That the railroad company had established and published through joint rates and charges upon carload shipments of live stock to New York is not disputed. The rates furnished the defendant in error were the regularly published rates. Those rates and schedules did not provide for an expedited service, nor for transportation by any particular train. Neither was Kirby required to pay any other or higher rate for the promised special service, by which his car was to be carried so as to be attached to the fast stock special and carried by it to New York.

By the third section of the original act of February 4, 1887, 24 Stat. 379, it is made unlawful to give any undue or unreasonable "preference or advantage," to any particular person, or to subject any particular person to "any undue or unreasonable prejudice or disadvantage in any respect whatever." By the sixth section of the same act it is required that the carriers subject to the act shall

print and keep for public inspection schedules showing the
rates, charges and classifications, "and any rules or regulations, which in any wise change or affect or determine
any part or the aggregate of such aforesaid rates and fares
and charges." The same section also provides as follows:
"And when any such common carrier shall have established and published its rates, fares, and charges in compliance with the provisions of this section, it shall be unlawful for such common carrier to charge, demand, collect
or receive from any person or persons a greater or less
compensation, for the transportation of passengers or
property, or for any services in connection therewith, than
is specified in such published schedules of rates, fares, and
charges as may at the time be in force."

By the act of February 19, 1903, known as the
Elkins Act, amending the act of 1887, 32 Stat. 847,
c. 708, it is made "unlawful for any person, persons, or
corporation to offer, grant, or give or to solicit, accept or
receive any rebate, concession, or discrimination in respect of the transportation of any property in interstate
or foreign commerce by any common carrier subject to
said act to regulate commerce and the acts amendatory
thereto whereby any such property shall by any device
whatever be transported at a less rate than that named
in the tariffs published and filed by such carrier, as is
required by said act to regulate commerce and the acts
amendatory thereto, or whereby any other advantage is
given or discrimination is practiced."

The implied agreement of a common carrier is to carry
safely and deliver at destination within a reasonable
time. It is otherwise when the action is for a breach of a
contract to carry within a particular time, or to make a
particular connection, or to carry by a particular train.
The railroad company, by its contract, became liable for
the consequence of a failure to transport according to its
terms. Evidence of diligence would not excuse. If the

action had been for the common-law carrier liability, evidence that there had been no unreasonable delay would be an answer. But the company, by entering into an agreement for expediting the shipment, came under a liability different and more burdensome than would exist to a shipper who made no such special contract.

For such a special service and higher responsibility it might clearly exact a higher rate. But to do so it must make and publish a rate open to all. This was not done.

The shipper, it is also plain, was contracting for an advantage which was not extended to all others, both in the undertaking to carry so as to give him a particular expedited service, and a remedy for delay not due to negligence.

An advantage accorded by special agreement which affects the value of the service to the shipper and its cost to the carrier should be published in the tariffs, and for a breach of such a contract, relief will be denied, because its allowance without such publication is a violation of the act. It is also illegal because it is an undue advantage in that it is not one open to all others in the same situation.

In *Armour Packing Company* v. *United States*, 209 U. S. 57, 72, Mr. Justice Day, dealing with a violation of the act by carrying out a contract for a rate, after the rate had been changed by publication of a higher rate, said:

"The Elkins Act proceeded upon broad lines and was evidently intended to effectuate the purpose of Congress to require that all shippers should be treated alike, and that the only rate charged to any shipper for the same service under the same conditions should be the one established, published and posted as required by law. It is not so much the particular form by which or the motive for which this purpose was accomplished, but the intention was to prohibit any and all means that might be resorted to to obtain or receive concessions and rebates from the fixed rates, duly posted and published."

The broad purpose of the Commerce Act was to compel the establishment of reasonable rates and their uniform application. That purpose would be defeated if sanction be given to a special contract by which any such advantage is given to a particular shipper as that contracted for by the defendant in error. To guarantee a particular connection and transportation by a particular train, was to give an advantage or preference not open to all and not provided for in the published tariffs. The general scope and purpose of the act is so clearly pointed out in *New York, N. H. & H. Railroad Company* v. *Interstate Commerce Com.*, 200 U. S. 361, 391, and in *Texas & P. Railroad Company* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, as to need no reiteration.

That the defendant in error did not see and did not know that the published rates and schedules made no provision for the service he contracted for, is no defense. For the purposes of the present question he is presumed to have known. The rates were published and accessible, and, however difficult to understand, he must be taken to have contracted for an advantage not open to others. *Texas & P. Railway Co.* v. *Mugg*, 202 U. S. 242.

The claim that the defendant in error may recover upon the carrier contract, stripped of the illegality, under *Merchants' Cotton Press Co.* v. *Insurance Co.*, 151 U. S. 368, is not presented by this record. The declaration counted only upon the breach of a special contract which was illegal. There was no count based upon the carrier's liability for negligence in not promptly shipping and delivering. The judgment was rested upon the damages resulting from the breach of the special contract, and not at all upon the liability of the carrier otherwise.

For the error in not holding the special contract invalid under the Interstate Commerce Act, the judgment must be reversed and the case remanded for such further proceedings as are not inconsistent with this opinion.