## ILLEGAL AGREEMENT BY RAILWAY AGENTS TO CARE FOR LIVE STOCK IN TRANSIT.

Superior Court of Cincinnati.

JAMES F. BENNETT v. THE PENNSYLVANIA COMPANY AND THE
PITTSBURG, CINCINNATI, CHICAGO & ST. LOUIS
RAILWAY COMPANY.

Decided, December 10, 1914.

*Railways—Shipment Under Uniform Live Stock Contract—Agreement
to Render Additional Services Void—Action to Recover for Hogs
Suffocated in Transit Through Lack of Care.*

Plaintiff shipped a car load of hogs via defendants' lines between two
points within this state under a uniform live stock contract
which provided that plaintiff was to care for, feed and water the
stock, and unload it at destination, "whether delayed in transit
or otherwise." Before arrival at destination the car was delayed,
and defendants' employees agreed to care for and water the stock
and deliver them for plaintiff. Because of defendants' failure to
water and sprinkle them; forty of the hogs were suffocated, and
plaintiff sued for their value. *Held*, on demurrer to the petition
that as the effect of defendants' agreement was to give to plaint-
iff a service greater and other than that specified in the con-
tract, it was illegal and void under Sections 510 and 568 of the
General Code, and plaintiff could not recover.

*Black, Swing & Black,* for plaintiff.
*Maxwell & Ramsey* and *Joseph F. Goldsberry,* contra.

OPPENHEIMER, J.

Plaintiff shipped via defendants' roads a carload of hogs from
Clinton, Ohio, to this city, under a "uniform live-stock con-
tract." This contract provided that the shipper should, at his
own sole risk and expense, load and take care of, feed and
water the stock while being transported, whether delayed in
transit or otherwise and unload the same; and that the carrier
should not be liable for, or on account of, any injury sustained
by the stock by reason of overloading, crowding or suffocating,
or by heat, cold or changes in weather. The petition alleges

that plaintiff accompanied the train which conveyed the hogs to defendant's yards in the outskirts of the city, where they arrived on the morning of September 2, 1913; that defendants were unable or unwilling to transport the hogs to their destination at the Union Stock Yards until after 6 P. M. of that day; that "the plaintiff was ready and willing to remain and to take care of the hogs until their arrival, but that defendants, their agents and employees voluntarily waived all of the provisions of said contract, if any, providing that the plaintiff should remain to take care of said hogs, and agreed to look after them during the day and until their arrival at destination, and to water and sprinkle them when necessary, and to carry and deliver them safely," but that, although the weather was hot and it was necessary and customary to water and sprinkle hogs which were being transported in that manner, defendants' employees failed to water and sprinkle them, as a result of which failure forty of them died. Plaintiff seeks to recover from defendants the sum of $600, the value of the hogs so lost by him.

To this petition defendants demur upon the ground that the alleged agreement to undertake the care of the hogs on September 2, 1913, until their delivery at their destination, upon which plaintiff relies, is void.

We are of opinion that this position is well taken and that the demurrer must be sustained.

The General Code of this state provides that all railroads doing business within its borders shall file with the Railroad Commission of Ohio schedules showing all rates and charges "for transportation of passengers and property, and any service in connection therewith" (Section 505); "that no railroad shall charge, demand, collect or receive a greater or less compensation for the transportation of passengers or property, or for any service in connection therewith, than is specified" in such schedules (Section 510); and that whoever "knowingly accepts or receives a concession or discrimination in respect to transportation of property * * * whereby any service or advantage is received other than that specified" in such schedule, shall be punished by a fine (Section 568).

We have been unable to find any cases in this state in which these sections of the code are construed, but they are manifestly copied from the Federal Interstate Commerce Act of June 29, 1906, Ch. 3591 (34 Stat. L., 584; Fed Stat. Ann., Supp., 1909, pp. 260 *et seq.*). Accordingly we may look for enlightenment to the federal decisions which have to do with the interpretation of the Interstate Commerce Act. *Railway Co.* v. *Hirsch,* 204 Fed., 849.

The purpose of the act was clearly to establish reasonable and uniform rates for transportation, to eradicate and prevent every form of discrimination and favoritism, and to place every shipper upon precisely the same level as to the service to be rendered and the charge to be made therefor. The General Assembly did not see fit to permit any exception to this salutary rule, and this court has no authority to create an exception in favor of any person. *Railway Co.* v. *Kirby,* 225 U. S., 155, 166; *United States* v. *Railway Co.,* 163 Fed., 114. And the shipper is conclusively presumed to know the contents of the schedules which have been filed in compliance with the provisions of the code, including the nature and extent of the services which the company shall render upon the payment of the prescribed tariffs, and to know that the service contracted for was not permitted by the schedule. *Railway Co.* v. *Carl,* 227 U. S., 639; *Railway Co.* v. *Kirby,* *supra.*

At the time when this shipment was made, defendants were prohibited by ordinance from switching the car containing plaintiff's hogs from their own tracks to the Union Stock Yards between the hours of 6 A. M. and 8 P. M. (Codification of Ordinances, Ed., 1911, Section 613). Plaintiff must therefore have known that if the car reached this city between those hours, some delay would necessarily ensue. The contract was intended to provide against such a contingency, for by its terms plaintiff was to "take care of, feed and water said stock while being transported, *whether delayed in transit or otherwise,* and to unload the same." Plaintiff alleges, however, that defendants waived these provisions of the contract, and undertook, in addition to the services which it was required to render in the mat-

ter of transportation, to take care of, water and sprinkle the hogs while they were still being transported and to unload and deliver them. In other words, this service, which was by contract to be rendered by plaintiff, was voluntarily and gratuitously undertaken by defendants.

That such service was "greater" or "other than" that "specified in the printed schedule" appears to us to be perfectly obvious. If the agreement had been carried out, plaintiff would have received a service which other shippers did not receive, and which defendants were under no contractual obligation to render. The giving of such service is unlawful. *Winn* v. *Express Co.*, 128 N. W. (Ia.), 663; *Siemonsma* v. *Railway Co.*, 139 N. W. (Ia.), 1077; *Clegg* v. *Railway Co.*, 203 Fed., 971.

Plaintiff contends that the waiver in this case was not a discrimination, because the circumstances were peculiar—that the contingency which was found to exist was not within the contemplation of the parties at Clinton. This merely begs the question at issue. As a matter of fact, the possibility of delay was manifestly foreseen, and the contract specifically provided that these services, which defendants are alleged to have undertaken, were to be rendered by plaintiff whether the shipment was delayed in transit or not.

Plaintiff further contends that there can be no discrimination unless two parties are involved; that unless it can be shown that defendants have agreed to render to him services which were denied to others under the same or similar circumstances, no discrimination exists. This view, however, leaves out of consideration the statutory regulation. Not only are defendants forbidden to "give undue or unreasonable preference or advantage to a particular person" (G. C., Section 567), but plaintiff himself is also expressly forbidden to receive *any service other than that specified in the contract* (G. C., Section 568), whether others receive such service or not.

Again plaintiff contends that the additional service, to be unlawful, must be contracted for at the shipping point. This contention finds no support in the statutes to which reference has been made. Nor does it find any support in reason, for if serv-

ices, concessions or rebates might be given at the point of destination or during the transit, provided they were not previously contracted for, the law would be a mere *brutum fulmen.*

Plaintiff finally contends that the discrimination, to be inhibited, must be undue or unreasonable. It is true that Section 567 of the General Code forbids common carriers to "give undue or unreasonable preference or advantage to a particular person * * * in any respect whatever." It is also true that this section forbids *only* such preference or advantage as is unreasonable or undue. *Railroad Commission* v. *Railway,* 82 O. S., 25. But plaintiff draws an erroneous conclusion from these premises. Railroads may not discriminate between persons who are similarly situated, in the matter of charges made or services rendered in the transportation of themselves or their property. Where distinctions are made, it must be because of some real differences in circumstances or conditions which warrant such distinctions. These distinctions may be embodied in schedules which are filed with the commission in the manner indicated. But these schedules, if they are otherwise proper, prescribe finally the charges which may be made or the services which may be rendered; and the shipper is then forbidden, by Section 568, to receive any services other than those which are thus stipulated.

It remains for us to determine the effect of the illegality of the agreement for the breach of which plaintiff seeks damages. Plaintiff's claim rests, of course, solely upon that agreement. And when plaintiff can not establish his cause of action without relying upon an illegal contract, he can not recover, even though defendants are parties to the violation of the law. *Taenzer* v. *Railway Co.,* 191 Fed., 543, 550; *Penn* v. *Borman,* 102 Ill., 523; *Gunter* v. *Leckey,* 30 Ala., 591; *Railway Co.* v. *Wilcox,* 99 Va., 394; *Railway Co.* v. *Brick Co.,* 116 S. W. (Ky.), 1183.

Accordingly the demurrer to the petition must, as we have said, be sustained.