## Wytheville

NORFOLK-SOUTHERN RAILROAD COMPANY V. WHITEHURST.

### June 10, 1915.

1. CARRIERS — *Interstate Shipments — Change of Destination — Terms—How Regulated—What Agreements Void.*—A special agreement by a carrier with a particular shipper for the diversion of an interstate car, not made in conformity to its published tariff and conditions as prescribed by the rules of the Interstate Commerce Commission gives to the particular shipper an advantage over other shippers and makes a discrimination in his favor which is prohibited by Act of Congress, and hence is void. The regulations of interstate commerce are not imposed for the benefit of the carrier alone and cannot be waived by him at pleasure. The chief purpose of such regulations is to put all shippers of the same class on the same plane, and to prevent unfair preferences among them.

Error to a judgment of the Circuit Court of the city of Norfolk in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*James G. Martin,* for the plaintiff in error.

*S. M. Brandt,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

The plaintiff below, W. L. Whitehurst, brought an action in the Circuit Court of the city of Norfolk against the Norfolk Southern Railroad Company to recover damages for its alleged negligence in connection with the shipment of

three carloads of cabbages, under separate bills of lading, from a station in Princess Anne county, Virginia, to Boston, Massachusetts.

The first two cars were shipped May 30, 1913, and the last on June 2, following. There was a verdict and judgment in favor of the plaintiff.

The last shipment was made the subject of a separate count in the declaration, and the argument of counsel was mainly directed to rulings of the circuit court with respect to that shipment. The consignment was delivered without change of cars to the consignee in Boston, but the complaint is that while in transit the railroad agreed to divert the shipment to another consignee in the city of New York and failed to do so.

We shall pass by several minor assignments of error that cannot affect the result, and address ourselves to what we conceive to be the ruling question in the case, namely, the admission by the court over the objection of the defendant of evidence of a special agreement for the diversion of an interstate car, not made in conformity to its published tariff and conditions as prescribed by the rules of the Interstate Commerce Commission, and basing an instruction favorable to the plaintiff on that evidence. It will be observed that this assignment involves an important Federal question.

The rules of the Interstate Commerce Commission formulated in pursuance of United States Compiled Statutes, 1901, (Supp. 1911), Ch. 1, for Regulation of Common Carriers, so far as pertinent to this inquiry, were put in evidence. They declare with respect to diverting cars: "The privilege is of value to the shipper, and in order to avoid discrimination it is necessary for the carrier that grants such privilege to publish in its tariff that fact, together with the conditions under which it may be used and the charge that will be made therefor. Such rules should be stated in terms that are not open to misconstruction."

In pursuance of that regulation the defendant adopted a tariff and conditions upon which diversions might be made, which state in part: "Provided parties making request for change of destination or name of consignee, furnish satisfactory proof of ownership and acceptable form of release or indemnity bond."

The defendant had adopted a printed form of indemnity contract to be employed in diverting cars; but it is not pretended that the special agreement upon which the court's instruction was predicated complies in any particular with the foregoing requirements.   On the contrary, the agreement between the parties for diverting the car was a special arrangement consummated over the telephone.

It is a fundamental error to suppose that these regulations are imposed for the benefit of the carrier alone, and can be waived by him at pleasure.   Obviously, that construction would nullify the rule the chief purpose of which is to put all shippers of the same class upon the same plane, and to prevent unfair preferences among them.

This case comes directly within the influence of the decision of this court in the analogous case of *C. & O. Ry. Co.* v. *Ruckman*, 115 Va. 493, 80 S. E. 496, where it was held, that "A special contract with a particular shipper, whereby a carrier agrees for the published rate to expedite an interstate shipment of freight and deliver the same on a designated day, gives to the particular shipper an advantage over other shippers and makes a discrimination in his favor which is prohibited by the interstate commerce act, and hence such a contract is void."

So, also, the decision of the Supreme Court of the United States in *Chicago & Alton R. Co.* v. *Kirby*, 225 U. S. 155, 32 Sup. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914 A. 501, condemns special contracts with particular shippers, the effect of which is to discriminate against other shippers.

Such contracts are declared to be violative of the Elkins act of February 19, 1903, 32 Stat. 847, Ch. 708 (U. S. Comp. St. 1913, sec. 8597) ; and relief in that case was denied.

For the error of the circuit court in not holding the special contract for the diversion of the car in question invalid, and making it the ground for modifying the instruction requested by the defendant, the verdict of the jury must be set aside, the judgment reversed and case remanded for a new trial not in conflict with this opinion.

*Reversed.*