LEVI ROBERTS *v.* NASHVILLE, C. & ST. L. RY. Co.

(*Jackson.* April Term, 1916.)

1. **COMMERCE.** Interstate commerce. Validity of contract. Complaint.

A complaint for breach of contract by an interstate carrier for an expedited shipment which does not show that the carrier had no published tariff covering such shipments, does not show that the contract was illegal under the Interstate Commerce Act of Feb. 4, 1887, chapter 104, section 3, 24 Stat. 380 (U. S. Comp. St. 1913, section 8565), and the Elkins Act, Feb. 19, 1903, chapter 708, 32 Stat. 847. (U. S. Comp. St. 1913, sections 8597-8599). (*Post, pp.* 50-54.)

Acts cited and construed: Acts 1887, ch. 104, Sec. 3.

Case cited and distinguished: Chicago, etc., R. Co. v. Kirby, 225 U. S., 155.

2. **COMMERCE.** Interstate commerce. Validity of contract.

In an action for breach of an interstate carrier's contrcat for an expedited shipment, where it appeared that there was no published tariff for such shipment, the contract was illegal under the Interstate Commerce Act and the Elkins Act, since it gave an undue advantage to the shipper, and there could be no recovery thereon. (*Post, pp.* 50-54.)

---

FROM HENRY

---

Appeal from the Chancery Court of Henry County. —J. W. Ross, Chancellor.

FITZGERALD HALL and S. P. FITZHUGH, for appellant.

TAYLOR & HUDSON, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The bill of complaint was filed to recover $706.50, as the value of certain tobacco delivered by complainant,

Roberts v. Railroad.

Roberts, to the railway company at Puryear, Tenn., under a contract to be transported to and delivered at Paducah, Ky.; and it is alleged that the tobacco had never been so transported and delivered.

The chancellor held that complainant was seeking to recover on a contract that called for an expedited delivery of tobacco on a specified date fixed; that such a contract is void under the federal statute, and on that ground dismissed the bill of complaint.

Complainant, Roberts, appealed to the court of civil appeals, and that court reversed the ruling of the chancellor, and entered a decree in favor of complainant in the amount sued for.

The testimony shows that Roberts placed in the company's depot at Puryear the tobacco, and that while it yet remained in the depot it was destroyed by a fire which originated on premises other than defendant's, but was communicated to the depot. Negligence on the part of the company in respect of the fire is not shown.

The bill of complaint alleged among other things:

"That complainant in the month of June, 1913, delivered to defendant in the town of Puryear, Tenn., a station along defendant's railway between Memphis and Paducah, about fifty miles south of last-named place, five hogshead of tobacco, to wit, 9,000 pounds worth $706.50, on a contract that the defendant would deliver said tobacco to complainant at Paducah, Ky., in good order on the morning of Tuesday, June 17,

1913, the defendant for a valuable consideration contracting so to do.''

After proof was introduced, but before the chancellor had announced his conclusion, complainant was granted permission to and did amend the bill of complaint by adding after the words ''June 17, 1913,'' the words ''that said time was a reasonable time within which to transport said tobacco from Puryear to Paducah, a distance of about fifty miles.''

The ruling of the chancellor was evidently based upon the decision in the case of *Chicago, etc., R. Co.* v. *Kirby,* 225 U. S., 155, 32 Sup. Ct., 648, 56 L. Ed., 1033, and upon the provisions of the Interstate Commerce Act and the acts amendatory thereof.

The Interstate Commerce Act, section 3 (U. S. Comp. St., 1913, section 8565) provides:

''That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.''

The Elkins Act of February 19, 1903, also inhibited the giving or acceptance of any sort of advantage or discrimination in interstate shipments.

Roberts v. Railroad.

In the Kirby Case above referred to the supreme court of the United States, in an opinion by Mr. Justice Lurton, held that a contract which provided for an expedited shipment was void and unreasonable, saying:

"The implied agreement of a common carrier is to carry safely and deliver at destination within a reasonable time. It is otherwise when the action is for a breach of a contract to carry within a particular time, or to make a particular connection, or to carry by a particular train. The railroad company, by its contract, became liable for the consequence of a failure to transport according to its terms. Evidence of diligence would not excuse. If the action had been for the common-law carrier liability, evidence that there had been no unreasonable delay would be an answer. But the company, by entering into an agreement for expediting the shipment, came under a liability different and more burdensome than would exist to a shipper who made no such special contract.

"For such a special service and higher responsibility it might clearly exact a higher rate. But to do so it must make and publish a rate open to all. This was not done.

"The shipper, it is also plain, was contracting for an advantage which was not extended to all others, both in the undertaking to carry so as to give him a particular expedited service, and a remedy for delay not due to negligence.

"An advantage accorded by special agreement which affects the value of the service to the shipper and its cost to the carrier should be published in the tariffs; and for a breach of such a contract, relief will be denied, because its allowance without such publication is a violation of the act.    It also illegal because it is an undue advantage, in that it is not one open to all others in the same situation.  . . .

"The declaration counted only upon the breach of a special contract which was illegal.    There was no count based upon the carrier's liability for negligence in not promptly shipping and delivering.    The judgment was rested upon the damages resulting from the breach of the special contract, and not at all upon the liability of the carrier otherwise."

The railway company contended that the bill of complaint alleged an illegal contract of shipment.    But we think the court of civil appeals properly held this insistence not to be sustainable.

In the Kirby Case, as shown by the above quoted language, it is recognized that there may be a valid special agreement for an expedited shipment, in the expression that for such a special service and high responsibility the railway company might exact a higher rate, but to do so it must make and publish a rate open to all.    That is, the published tariffs must set forth the special rate for the special service to be rendered in expediting shipment.    When, therefore, the bill set forth a contract for the expedition of the shipment without showing at the same time that the published

Roberts v. Railroad.

tariffs did not cover the same, the bill of complaint did not show on its face the invalidity of the contract sued on.

However, when proof was introduced the tariffs were exhibited and they, as was true in the Kirby Case, showed that there was no published rate for such special service. It was thus made manifest that the special contract alleged was an illegal one. The bill of complaint set forth no other than the special contract, which was thus illegal. There was, in other words, no allegation setting up a carrier's liability for negligence in not promptly shipping and delivering under a regular contract of shipment. This presented the same situation which appeared in the Kirby Case.

We fail to see why the chancellor was in error in his holding that complainant could not recover on this state of the pleadings. The bill plainly sets out as the basis of the action a definite special contract for an expedited shipment, within the meaning of the Kirby Case. Under the rule of *allegata et probata* there was no allegation to which proof of a negligent holding of the tobacco in the depot for an unreasonable time or of a failure to deliver within a reasonable time could have been based. The amendment merely had the effect to incorporate a charge that in legal effect the special contract time for delivery was a reasonable time within which to transport the tobacco from Puryear to Paducah. In fairness to the parties and the court below the amendment cannot be stretched so as to be made to constitute a charge of a violation of a

general contract of ordinary carriage as contradistinguished from the special contract for expedited carriage.

Reverse the decree of the court of civil appeals, and affirm that of the chancery court.