## Louisville & Nashville Railroad Company v. Warren County Strawberry Growers' Association.

(Decided November .25, 1924.)

### Appeal from Warren Circuit Court.

1. Carriers—Carrier Contracting to Deliver Within Specified Time Cannot Plead Delivery Within Reasonable Time.—Carrier contracting to deliver within specified time does not impliedly agree to deliver within reasonable time, and may not set up delivery within reasonable time as defense in action for violation of contract.

2. Carriers—Carrier Contracting to Deliver Within Specified Time, Without Publishing and Filing Schedule, Guilty of Discriminatory Preference.—Carrier fixing time of delivery of particular freight commodity by contract, without publishing and filing schedule with Interstate Commerce Commission as part of tariffs, extends advantage to shippers constituting discriminatory preference, in violation of Interstate Commerce Act Feb. 4, 1887, as amended by Act Feb. 19, 1903 (U. S. Comp. Stats., section 8597).

3. Pleading—Refusal to Require Shipper to Set Forth in Separate Paragraphs and Elect Between Different Causes of Action Held Error.—Overruling motion to require shipper to set forth in separate paragraphs and elect between causes of action for breach of contract to deliver berries within certain time, and violation of implied agreement to deliver within reasonable time, held erroneous.

4. Carriers—Admission of Evidence of Void Contract to Deliver Within Specified Time Held Prejudicial Error.—Admission of evidence of carrier's contract to deliver berries at destination within specified time, which was void for failure to publish and file schedule with Interstate Commerce Commission, held prejudicial error as furnishing standard by which to measure reasonable time for delivery, on which right to recover was based by court's instructions.

5. Appeal and Error—Questions Unlikely to Arise on Retrial Not Determined.—Questions unlikely to arise on retrial need not be determined.

RODES & HARLAN, WOODWARD & WARFIELD and ASHBY M. WARREN for appellant.

THOMAS W. THOMAS, THOMAS, THOMAS & LOGAN, C. U. McELROY and O. P. ANDERSON for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Reversing.

This is an appeal by the L. & N. Railroad Company from a judgment of the Warren circuit court in favor of the Warren County Strawberry Growers' Association for $16,000.00 rendered on the verdict of a jury in an action for damages growing out of the shipment by the association of forty carloads of strawberries. There were three shipments of the berries and a separate action was brought for each shipment; but the three were consolidated and heard and tried together. With reference to the first two shipments, consisting of 16 and 10 cars, respectively, by the petitions, appellee pleaded a contract by which appellant agreed to deliver at destination such of the berries as were consigned to New York City within 78 hours and 45 minutes, and such of them as were consigned to Philadelphia, Pa., within 55 hours after departure from Bowling Green. It pleaded the violation of that contract and the damages resulting to it from same. It also pleaded that appellant violated its implied agreement to deliver at its destination within a reasonable time the two shipments of berries and its consequent damages. With reference to the third shipment the petition merely set forth a cause of action for damages consequent upon appellant's violation of its implied agreement to deliver within a reasonable time. Appellant moved to require appellee to paragraph its petition so as to set forth in separate paragraphs the cause of action for the violation of the contract and that for the violation of the implied agreement to deliver within a reasonable time, which motion the trial court overruled. Appellant then moved the court to strike all that portion of the petition relating to the alleged contract to deliver within a specified time, which the court also overruled. Exceptions were noted for appellant. By answer defendant denied that it failed to deliver the berries within a reasonable time.

It pleaded that the contract relied upon by appellee which provided that it should deliver the berries in question within a specified time was in violation of the acts of Congress prohibiting discrimination by a carrier in freight rates and service. Appellee by reply pleaded that appellant had on file with the Interstate Commerce Commission its tariffs which fixed the freight rate on strawberries from Bowling Green to Philadelphia and New York, but that such tariffs did not provide the time schedule for delivery of that commodity from the one place to the others, but left open to appellant to fix its own time schedules for such delivery; and that since it undertook at the freight rate specified in its tariffs to do so in contracting to deliver within the specified time appellant did not thereby violate the acts of Congress prohibiting discrimination by carriers. On the issue thus made the case was tried with the result above indicated.

It is contended by appellant that the contract pleaded by appellee by which it agreed to deliver the berries in question to their destination within a specified time is void because prohibited by act of Congress. It is conceded that appellant's tariffs on file with the Interstate Commerce Commission do not contain the schedule of time in which for the rates therein specified that commodity shall be delivered to Philadelphia or New York. By the original act of Congress, that of February 4, 1887, 24 Stat. 379, it was made unlawful to give to any person any undue or unreasonable "preference or advantage" or to subject any one to "any undue or unreasonable prejudice or disadvantage." By that act provision was made for the publication of tariffs showing the rates, charges and classifications with reference to different freight commodities, "and any rules or regulations, which in any wise change or affect or determine any part or the aggregate of such aforesaid rates and fares and charges." By the act it was made indispensably necessary that such tariffs be filed with the Interstate Commerce Commission. By the act carriers were forbidden to charge greater or less compensation than that fixed in the tariffs. By act of Congress of February 19, 1903, known as the "Elkins Act," which amended the act of 1887, 32 Statutes 847, c. 708, it is made

"Unlawful for any person, persons, or corporation to offer, grant, or give or to solicit, accept or receive any rebate, concession, or discrimination in re-

spect of the transportation of any property in interstate or foreign commerce by any common carrier subject to said act to regulate commerce and the acts amendatory thereof whereby any such property shall by any device whatever be transported at a less rate than that named in the tariffs published and filed by such carrier, as is required by said act to regulate commerce and the acts amendatory thereof, or whereby any other advantage is given or discrimination is practiced.''

In the absence of a contract to deliver within a specified time the carrier impliedly agrees to deliver within a reasonable time or with reasonable dispatch. Such is not the case when the carrier undertakes to deliver within a specified time. The time agreed upon in a contract to deliver within a specified time may or may not be a reasonable time. The fact that the carrier has delivered within a reasonable time would not be a defense for the violation of a contract to deliver within a specified time. Hence, it requires no extensive argument to demonstrate that a carrier contracting to deliver a commodity within a specified time extends to the shipper an advantage and imposes upon itself an obligation not contemplated in the usual method of shipment. If in the tariffs of a carrier on file with the Interstate Commerce Commission there is no provision fixing the schedule of time for delivery of commodities shipped under those tariffs and if for that reason the carrier may contract with whomsoever it chooses to deliver within a specified time and decline to so contract with others with whom it may not desire to do so, the entire scheme of prevention of discrimination by carriers devised by the Federal Congress would be rendered of no value. Such shipments with delivery so contracted for would universally be given every service preference at the hands of the carrier. Such preference would be discrimination of the most pernicious character. The selection of the beneficiary of such discrimination under those conditions would be left entirely to the carrier. It is certainly true that a carrier may institute a service for a particular freight commodity and in so doing may fix time schedules for delivery of the commodity, but whenever it does so and the time of delivery is intended to be a part of the service it is indispensably necessary that such be published as a part of the tariffs and be filed with the Interstate Commerce Commission. Then such

service would be open to the shipping public at large on equal terms. We can not escape the conclusion that the contract pleaded by appellee herein extended a discriminatory preference to it that no other shipper enjoyed under appellant's tariffs on file with the Interstate Commerce Commission and that, therefore, the contract in question was void. Our conclusion to that effect is in accord with that of the Supreme Court of the United States as may be seen by reference to Chicago & Alton R. R. Co. v. Kirby, 225 U. S. 155; Davis, Agent v. Cornwell, 44 Sup. Ct. Rep. 410; and Davis v. Henderson, 45 Sup. Ct. Rep. 24, and the numerous cases cited therein. The Kirby case, *supra,* is directly in point. He shipped a carload of horses from Springfield, Illinois, to New York City. The initial carrier agreed to transport them to Joliet, Illinois, in time to connect with and so that they could from there be carried to destination by a fast stock train known as the "Horse Special" operated by the M. C. Railroad. The initial carrier had established and published through joint rates upon carload shipments from Springfield, Ill., to New York City, but the tariffs and rules and regulations with reference thereto on file with the Interstate Commerce Commission did not provide for time of delivery or for transportation by any particular train. The initial carrier failed to make connection with the "Horse Special." Kirby sued on his contract and the carrier defended on the ground that the contract was void. After quoting the various federal statutes prohibiting discrimination, in disposing of the question the Supreme Court said:

"The implied agreement of a common carrier is to carry safely and deliver at destination within a reasonable time. It is otherwise when the action is for a breach of a contract to carry within a particular time, or to make a particular connection, or to carry by a particular train. The railroad company, by its contract, became liable for the consequence of a failure to transport according to its terms. Evidence of diligence would not excuse. If the action had been for the common-law carrier liability, evidence that there had been no unreasonable delay would be an answer. But the company, by entering into an agreement for expediting the shipment, came under a liability different and more burdensome than would exist to a shipper who made no such special contract.

"For such a special service and higher responsibility it might clearly exact a higher rate. But to do so it must make and publish a rate open to all. This was not done.

"The shipper, it is also plain, was contracting for an advantage which was not extended to all others, both in the undertaking to carry so as to give him a particular expedited service, and a remedy for delay not due to negligence.

"An advantage accorded by special agreement which affects the value of the service to the shipper and its cost to the carrier should be published in the tariffs, and for a breach of such a contract, relief will be denied, because its allowance without such publication is a violation of the act. It is also illegal because it is an undue advantage in that it is not one open to all others in the same situation. . . .

"The broad purpose of the Commerce Act was to compel the establishment of reasonable rates and their uniform application. That purpose would be defeated if sanction be given to a special contract by which any such advantage is given to a particular shipper as that contracted for by the defendant in error. To guarantee a particular connection and transportation by a particular train, was to give an advantage or preference not open to all and not provided for in the published tariffs. The general scope and purpose of the act is so clearly pointed out in New York, N. H. & H. Railroad Company v. Interstate Commerce Com., 200 U. S. 361, 391, and in Texas & P. Railroad Company v. Abilene Cotton Oil Co., 204 U. S. 426, as to need no reiteration."

From the foregoing, it follows that the court below should have sustained appellant's motion to require appellee to paragraph the petition herein and to elect which of the two causes of action it would prosecute.

Upon the trial of the case, over appellant's objection, appellee was permitted to introduce in evidence the facts relating to the making of the contract and the terms of the contract itself by which appellant agreed to deliver the berries within the specified time. The most of the evidence on that question consisted of the correspondence between the manager of the Strawberry Growers' Association and one of the officials of the freight department of the L. & N. Railroad Company. It is earnestly insisted

by appellant that in view of the fact that the contract itself was void, for the reasons above pointed out, evidence of the making of the contract and its terms was incompetent. As submitted to the jury by the court's instructions the right to recover herein was based not upon the alleged contract to deliver within a specified time but upon the carrier's liability to deliver within a reasonable time. Appellant insists that evidence of the making and of the terms of the contract to deliver within a specified time was highly prejudicial to it upon the trial of the case on the issue as to whether or not the freight commodity in question had been delivered within a reasonable time. It is hard to escape the conviction that such contention is right. When evidence was permitted to go to the jury that appellant had contracted to deliver the berries at their destination within a specified time, it is hard to escape the conclusion that they were thereby furnished the standard by which to measure "reasonable time" for delivery. We are forced to the conclusion that since the contract itself was void, all evidence pertaining to the contract was consequently inadmissible and that its admission was prejudicial to appellant.

Appellant contends that on its motion it should have been granted a change of venue. In view of the limited number of citizens of the county shown to be engaged in growing strawberries and members of appellee association and the limited area of the county shown to be devoted to that crop, and, considering the care of the trial court to see that no juror related by blood or marriage to the members of the association and those interested in the litigation served upon the jury, and, taking into account the evidence *pro* and *con* as to the existence of prejudice and bias against appellant among the citizens of Warren county and its probable effect on a trial of this case by a Warren county jury, we can not say that the trial court abused its discretion in refusing to grant a change of venue.

We deem it unnecessary to discuss and determine the other questions raised by appellants as it is unlikely they will occur upon another trial of the case. Any questions presented which are not decided, are reserved.

For the foregoing reasons the judgment is reversed and this cause remanded for further proceedings consistent with this opinion.