## DOMINIC ALLEGREZZA v. GREAT NORTHERN RAILWAY COMPANY.[1]

October 12, 1928.

No. 26,823.

**Carrier's promise to spot a car for delivery on certain track does not modify interstate bill of lading.**

1. The terms and conditions of the uniform bill of lading prescribed by the interstate commerce commission for an interstate shipment governs the rights and obligations of the shipper and carrier in respect thereto. This includes delivery, and a subsequent promise of the carrier to spot the car upon a certain track for delivery does not add to or modify the bill of lading.

**Evidence did not sustain findings.**

2. The findings of unreasonable delay of delivery and of loss therefrom are not sustained by the evidence.

**Findings on issues not raised by pleadings nor litigated at trial.**

3. Defendant was not entitled to findings upon issues not raised by the pleadings nor litigated at the trial.

**Error to exclude offered evidence.**

4. There was error in excluding evidence offered by defendant involving the rights of other shippers on its available delivery tracks, and the usual manner its switching crews work.

Carriers, 10 C. J. p. 194 n. 51; p. 211 n. 43; p. 305 n. 58.
Trial, 38 Cyc. p. 1969 n. 1, 2.

---

See 4 R. C. L. 5; 1 R. C. L. Supp. 1029.

[1]Reported in 221 N. W. 428.

Defendant appealed from an order of the municipal court of Minneapolis, C. L. Smith, J. denying its motion for a new trial. Reversed.

*Cobb, Hoke, Benson, Krause & Faegre,* for appellant.

*G. H. Smith* and *E. L. Tong,* for respondent.

HOLT, J.

The defendant appeals from the order denying its motion for a new trial.

The action is to recover damages from the delivering carrier of an interstate shipment for unreasonable delay in spotting for unloading a car of California muscat grapes, consigned to plaintiff at Hibbing, Minnesota. The trial was to the court. The findings of fact were that there was an unreasonable delay, and that plaintiff suffered damages thereby in the sum of $512.22, for which judgment was ordered.

The facts are in substance these, in so far as the admitted evidence shows:

The car reached defendant's railroad yard in Hibbing shortly before noon on September 3, 1924. Plaintiff was promptly notified of its arrival. One Nelson, an employe of defendant in the freight office, went with plaintiff to where the car was upon the tracks near the general or "house" delivery track. Plaintiff examined the grapes and found them in good condition. He wanted the car spotted that afternoon upon an industry track called the Fitger track so that he could sell and deliver the grapes from the car after dark. He had had some 14 cars of grapes spotted on this track during the summer and fall before this date. He testified that he had procured some 50 prospective purchasers who had agreed to buy the grapes in quantities up to two tons at the rate of $110 a ton if they deemed the grapes satisfactory. He does not claim he had made an unconditional binding agreement of sale to anyone, nor does he testify that he informed Nelson what arrangements he had made to have prospective buyers present after dark. Nelson promised to spot the car on the Fitger track before dark. The house track was the usual track for spotting cars to be loaded **or**

unloaded by team or truck. A graveled roadway paralleled it and it was well lighted in the nighttime. The Fitger track was nearly half a mile distant from the house track. It was principally maintained for the convenience of abutting industries. Another such industry delivery track called the Ryan track paralleled the Fitger track, the intervening space of 50 feet between the two being used as a driveway for teams or trucks loading or unloading from cars spotted upon the tracks. This driveway was not in as good condition as that leading to the house track; neither was it provided with any lighting system. The inference is that plaintiff desired to sell and deliver the shipment in the dark, since he concluded that those who would buy his grapes intended to turn them into wine and wished to keep the purchase a secret. Defendant's switching crew received the order to spot the car on the Fitger track. In the usual course of work the crew, a few minutes before its quitting time, coupled onto the car and took it to the Fitger track but could not place it there because an oil car, which was by a discharging pipe attached to an industry tank, could not be moved or detached. The Ryan track was full of spotted cars, among them being five cars of California grapes. The crew, since it was then after office hours and the station agents and assistants had left, thought the next best thing was to spot the car upon the house track, and did so. At eight p. m. plaintiff called Nelson at his home by telephone and told him his promise had not been kept. Nelson offered to come down and straighten matters out, but plaintiff said his purchasers were gone and nothing of aid could then be done. Between 10 and 11 next morning the car was spotted on the Fitger track. Plaintiff could find no purchasers for these grapes, but admitted that he sold a car of grapes spotted the next day, half of which were muscats. The car remained upon the Fitger track until the ninth, when it was sent to Ely and there disposed of at the loss stated.

The shipment moved under a bill of lading and had arrived at its destination. The contract of carriage had been fully performed, except that of placing the car in a proper place for unloading. Undoubtedly defendant could have insisted on delivery at the house

track or at any other place reasonably suitable for unloading. Plaintiff had no fixed place or industry adjacent to the track where by rights he could call on defendant to spot the car. No doubt Nelson was anxious and willing to accommodate plaintiff if it did not interfere with prior rights of other shippers and the customary conduct of defendant's business. The promise of Nelson could not be held a contract, for it lacked consideration. The shipment was interstate and, although no bill of lading was introduced, we must assume that it was in the form prescribed by the interstate commerce commission and contained the whole agreement. In re Bills of Lading, 52 I. C. C. 671. Therefore no additional contract in regard to delivery could be made with Nelson. McNeill & Scott Co. v. G. N. Ry. Co. 156 Minn. 120, 194 N. W. 614. No agreement for special advantages or preferences not covered by the bill of lading, and that must cover delivery, is valid. Chicago & Alton R. Co. v. Kirby, 225 U. S. 155, 32 S. Ct. 648, 56 L. ed. 1033, Ann. Cas. 1914A, 501. The question then recurs: Could the court, under the evidence which was admitted, find that there was unreasonable delay in spotting the car? It is plain that had plaintiff been notified at 6:30 p. m., the time he desired to have access to it on the Fitger track, that defendant had been unable to place it there but had spotted it on the house track no recovery could have been had for delay or any other cause now appearing. When informed about two hours later that the car had not been spotted as promised, Nelson offered to have the first available switching crew which went to work at 11 p. m. move the car to the Fitger track. Plaintiff then told Nelson it was too late to remedy the wrong he had suffered. In reality there was therefore no more than six hours delay in tendering delivery.

That plaintiff sees fit to conduct business only after ordinary business hours are past ought not to be charged against defendant. No loss occurred to plaintiff through any deterioration of the grapes. The loss is laid entirely to fluctuation of the market. It is difficult to find any basis for market value of a commodity which could be sold only under such peculiar conditions as to place and

time as plaintiff testified to. But assuming the contract to be embodied in the uniform bill of lading prescribed, § 2 thereof appears to forbid a recovery under the undisputed facts recited. It reads [In re Bills of Lading, 52 I. C. C. 671, opp. p. 740, Appendix A]:

"Sec. 2(1). No carrier is bound to transport said property by any particular train or vessel, or in time for any particular market or otherwise than with reasonable dispatch."

There is a bold statement by plaintiff alone that on the third the market value of the grapes was $110 a ton. There was no testimony as to any market value on the fourth or any other time than on the ninth and that at Ely. We conclude therefore that the finding of unreasonable delay as well as the one determining recovery on the basis of a difference in market value on the third and the next day, when delivery was made on the Fitger track, are not sufficiently supported.

Defendant claims it was entitled to two findings, asked for in the motion for a new trial, which would require a judgment in its favor, viz: (1) that plaintiff was to sell the grapes in retail from the car, which under G. S. 1923, §§ 7337-7340, required a license; he had no license; hence the sale would have been unlawful and would furnish no basis for recovery; (2) that plaintiff knew the prospective purchasers intended to use the grapes in violation of the prohibition law, and cannot profit by a participation therein. It is enough to say that no such issues were tendered by the answer, nor was evidence directed thereto at the trial.

The trial court who made the findings of fact having passed away, this court ought not to direct his successor to amend the same. In view of a new trial it should be stated that, since the law rigidly forbids granting any shipper privileges or preferences over other shippers, evidence should not have been excluded tending to prove that defendant in the handling of this car of grapes took into consideration the rights of other shippers then loading or unloading; also it should have been permitted to show when in the usual conduct of its business switching crews were at work. Other errors

in the admission or exclusion of evidence disclosed by the record need not be mentioned since their repetition is not likely to occur in another trial.

The order is reversed and a new trial granted.