ELLIOTT, Respondent, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

(161 N. W. 347.)

(File No. 3767.   Opinion filed February 16, 1917.)

1. **Carriers—Interstate Shipment of Stallions—Accepted Veterinary Certificate, Delay, Whether Justified.**

    Defendant railroad company received from shipper and accepted at initiation of shipment, a certificate from a proper veterinary in the state of destination, of soundness of the stallions shipped; the law of which state (Laws Mont. 1909, Chap. 108, Sec. 6) providing that, before a stallion could be shipped into said state for breeding purposes, there must be procured a certificate of the state or federal veterinary officer, certifying the stallion as free from designated diseases or unsoundness, that a copy thereof must be filed with a certain state official, before the stallion was imported, and that a carrier shall not so transport any stallion unless accompanied by such certificate. The certificate was not so filed. **Held,** that defendant could not delay the shipment after it was begun, simply because it changed its mind in regard to the sufficiency of such certificate; the Montana state authorities not having objected thereto; and that such delay was unjust, and rendered the carrier liable.

2. **Same—Shipment on Particular Train—Delay to Later Train, Whether Justified—Reasonable Time, Defined.**

    Although a contract for shipment of stallions did not require shipment upon any particular train, yet, having started the shipment, it could not wilfully or voluntarily delay it by cutting the car out of the train and delaying its transmission to a later train that would arrive at the interstate destination much later, although such delay was claimed to have been caused by failure of shipper to procure a proper veterinary certificate,

required by laws of the state of destination, as condition to importation of the stallions; carriers having accepted the certificate tendered at point of shipment; since, while a carrier may have a contract providing that it need not ship a consignment upon any particular train, and that it will not be liable for delays, yet there is in every contract for shipment an implied condition, binding carrier to transport within a reasonable time. **Held,** further, that what is such reasonable time depends upon the facts surrounding each shipment as they are known to the carrier.

3.  **Evidence—Livestock Shipping Contract—Parol, to Prove Shipper's Notification to Carrier, Admissibility.**

In a suit against a railroad for damages for delay in transporting two stallions, held, while evidence of previous or contemporaneous conversations was inadmissible to vary terms of written contract of shipment, it was admissible to prove what material matters were brought to carrier's notice.

4.  **Carriers—Livestock Shipping Contract, Restricting Value in— "Loss, Injury, or Damage" Distinguished from Damages for Delay—Carrier's Common-Law Liability.**

A written contract, under which shipment of stallions was made, provided that it was agreed that liability of carrier for any "loss, injury, or damages," for which it might be responsible, should be to the extent only of the agreed valuation of the stock. **Held,** that the term "loss, injury, or damage" referred solely to loss, injury, or damage to the property itself, and not to damages for delay in shipment, resulting in loss of an advantageous sale at a public horse sale, intended to be taken advantage of by shipper. That said contract limited the carrier's common-law liability; which liability should not be held limited beyond the plain provisions of the contract.

5.  **Same—Livestock Shipped for Public Sale—Damages—"Market Price," Distinguished from "Market Value"—Instruction.**

Where shipper of stallions was, to carrier's knowledge, making the shipment for the purpose of placing them on public sale at the opening day of a horse sale at destination point, **held,** that trial court was unfortunate in using the term "market price" rather than "market value," in instructing that the measure of damages was the difference between what the jury found the stallions could have been sold for on said first day and what they were afterwards sold for, providing shipper sold them "at the market price;" although there was no evidence as to market value of either stallion on said first day.

6.  **Same—Livestock Shipment for Stated Public Sale—Damages for Delay—Sufficiency of Evidence.**

In a suit for damages for delay in transporting stallions, shipped to be sold at a stated public horse sale at destination

point, the delay resulting in shipper missing the first day of the sale, **held,** that, there being no evidence as to market value of such stallions on the first day of the sale, or that bidders were then present to bid on such stallions, the evidence was insufficient to sustain verdict for plaintiff.

McCoy, J., taking no part herein.

Appeal from Circuit Court, Brown County. Hon. THOMAS L. BOUCK, Judge.

Action by J. A. Elliott, against the Chicago, Milwaukee & St. Paul Railway Company, to recover damages for delay in shipment of plaintiff's livestock. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

*William G. Porter,* and *Ed L. Grantham,* for Appellant.

*Crofoot & Ryan,* for Respondent.

(3.) To point three of the opinion, appellant cited: Jones on Evidence, Section 434; Strunk v. Smith, 8 S. D. 407, 66 N. W. 926; Barnard & L. Mfg. Co. v. Galloway, 5 S. D. 205, 58 N. W. 565; Johnson v. Kindred State Bank, 12 N. D. 336, 96 N. W. 588; Houghton Implement Co. v. Doughty, 14 N. D. 331, 104 N. W. 516; A. T. & S. F. Ry. Co. v. Robinson, 233 U. S. 173.

Respondent cited: A. T. & S. F. Ry. Co. v. Robinson, 233 U. S. 173.

(4.) To point four of the opinion. Sec. 1583, Civ. Code; Railroad Company v. Lockwood, 17 Wall. 357; Kansas City S. R. Co. v. Carl, 227 U. S. 639; Missouri K. & T. R. Co. v. Harriman Bros., 227 U. S. 657; Bernard v. Adams Exp. Co., 205 Mass. 254; Elliott on Railroads, 229; cited by Appellant.

(5.) To point five of the opinion, respondent cited: Sanford v. Peck, 63 Conn. 493.

WHITING, J. Plaintiff, the owner of two stallions, shipped the same over the defendant's line of railway from Aberdeen, S. D., to Miles City, Mont. He brought this action to recover damages which he claims to have suffered owing to alleged willful and inexcusable delay in such shipment. Verdict and judgment were in favor of the plaintiff, and from such judgment and an order denying a new trial this appeal was taken.

[1] Appellant contends that it is not liable in any sum whatsoever, for the reason that the delay complained of was justifiable, and that there is no evidence of lack of good faith on the part of the defendant. It appears that the statutes of Montana (Laws

1909, c. 108, §6) provide that, before a stallion can be shipped into said state for breeding purposes, there must be procured a certificate of a state or federal veterinary officer, certifying that such stallion is free from certain designated diseases or unsoundness. A copy of such certificate must be filed with the secretary of the Stallion Registration Board of Montana ten days before the stallion is imported into Montana. Such statutes also provide that no common carrier shall transport any stallion into such state unless such stallion is accompanied by the certificate above referred to. There is no statute requiring the carrier to advise itself that a copy of the certificate has been properly filed. The plaintiff had the stallions in question examined by a proper party, and procured from such party a certificate as to the stallions' freedom from diseases and unsoundness. No copy of such certificate was filed in the above-mentioned office. There was evidence sufficient to establish that this certificate substantially complied with the statute, was presented to appellant company at the point of shipment, was accepted by it, and was attached to the bill of lading turned over by it to the conductor in charge of the train upon which the shipment was made. Appellant company accepted the stallions, and placed them on board a train bound for Miles City. At a point in the state of North Dakota appellant set out the car containing said stallions, and refused to ship the same into Montana until a different certificate was furnished to it. No complaint was made that such certificate had not been filed in the proper office, and defendant was not aware of such fact. The authorities of Montana had in no manner interfered with such shipment. The trial court held that appellant was not justified in delaying such shipment, and we are of the opinion that such holding was correct. Having accepted this stock upon the strength of the certificate furnished to it, appellant could not delay this shipment, after it had begun same, simply because it changed its mind in regard to the sufficiency of such certificate; the authorities of the state to which the shipment was being made in no manner objecting thereto. Wilson v. Alabama, etc., R. R. Co., 77 Miss. 714, 28 South. 567, 52 L. R. A. 357, 78 Am. St. Rep. 543.

[2-3] Appellant contends that, under the written contract entered into between the respondent and appellant, the appellant was not bound to ship this stock upon any particular train, and

that it was at liberty, of its own accord and regardless of any question of noncompliance with the laws of Montana (so long as it acted in good faith), to delay the shipment as it did delay the same. Appellant complains strenuously of certain rulings of the trial court admitting in evidence conversations that respondent claims he had with the agents of appellant company both prior to and after the entering into the written contract under which the stallions were transported. Appellant contends that this was an attempt to vary by parol the terms of the written contract. Under such contract the appellant company did not agree to ship the stallions upon any particular train. There is no merit in appellant's contentions. While, under the contract, appellant did not agree to ship upon any particular train, yet , having started the shipment, it was not entitled to willfully delay the same by cutting the car out of this train and delaying its transmission to a later train that, would arrive at the point of destination much later—any contract by which a party sought to exempt himself from liability for willful wrong would be against public policy and void. We use the term "willful" as meaning "voluntary" or "intentional," not as implying a willingness or desire to injure. It is a well-established rule of law, supported by every known authority, that, while a carrier may, by its contract, provide that it need not ship a consignment upon any particular train, and that it will not be liable for delays, yet there is in every contract for shipment an implied condition binding the carrier to transport such consignment within a reasonable time. What is a reasonable time depends upon the facts surrounding each particular shipment as such facts are known to the carrier. While evidence of previous or contemporaneous conversations was inadmissible to vary the terms of the written contract, it was admissible to prove what material matters were brought to the carrier's notice. Under the undisputed facts of this case, the delay in this shipment was unreasonable, and rendered the carrier liable.

The written contract under which this shipment was made, following the provisions of the I. C. C. Tariff then in force, contained the following provision:

"Second. It is agreed, and this contract is upon condition, that the value of the livestock so to be transported is as hereinbelow named, and the liability of the company for any loss, in-

jury or damage for which it may be responsible, shall be to the extent only of such agreed valuation, upon which the rate of compensation for the transportation of said property is based: Horses or ponies (geldings, mares or stallions) asses (jacks or jennies), or mules, $100.00 each."

[4] Appellant contends that, under such contract, respondent was not entitled to recover in excess of $100 damages for each of said stallions, while the verdict and judgment were far in excess of $200. The respondent did not recover, and there was not submitted to the jury any. question of damages resulting from "any loss, injury or damage" of or to the property shipped. The property was shipped to Miles City for the purpose of selling same at a public auction that was to commence at Miles City on the day following the day on which the stallions would have reached Miles City if there had been no delay in their transportation. Respondent recovered judgment for the damage which the jury found he had suffered from not being able to place these stallions on sale on the first day of such public sale. It is the contention of respondent that the limitation of value in this contract had no application whatsoever to damages of the nature suffered by respondent. We are of the opinion that, taking the contract as a whole, it is clear that the term "loss, injury or damage," as used in the "Second" paragraph, refers solely to loss, injury or damage to the property itself. This contract limits the common-law liability of the carrier; such liability should not be held limited beyond the plain provisions of such contract. A somewhat similar contract was construed in Klass Com. Co. v. Wabash R. R. Co., 80 Mo. App. 164. The court there said:

"The 'loss or damage' there referred to was meant to cover the loss or damage done to the goods themselves, and does not cover the owner's damage sustained by reason of a mere failure to carry and deliver the goods in a reasonable time."

[5] Appellant contends that the trial court erred in its instructions regarding the measure of damage. There was evidence showing that appellant had notice of the purpose of the shipment and the date when the sale was to commence. There was evidence that respondent arranged for a sale of his stallions to be held on the first day of the sale; that the stallions did not reach Miles City until the first day of the sale, and not in time to be

placed on sale on that day; that respondent was unable to have them listed for sale at a later date during said sale; that he sold one of the stallions at private sale seven days after the arrival at Miles City, and the other at another public sale on the following week. The court instructed the jury that the measure of damage was the difference between what the jury found the stallions could have been sold for the first day and what they were afterwards sold for provided respondent sold them "at the market price at Miles City." We think this instruction unfortunate in the use of the term "market price" rather than "market value."

[6] No one testified as to the market value of either stallion at the time of its sale. There was no competent evidence as to the market value of either stallion on the first day of the sale. Respondent purported to give an estimate or opinion as to such value, but admitted that he was not present at the sale on that day. He therefore saw no horses sold on that day, and of his own knowledge knew nothing about the character of horses sold on that day. There was evidence that no stallions were sold on the first day. The purchaser of one of these stallions testified in relation to what that horse would have brought on Monday, that:

"I think if there was any one there looking for such a horse as that they would have paid as high as $2,000 or $2,500 for him."

Without any evidence that there were stallions such as this one sold on the first day of the sale, or that there were bidders present for the purpose of bidding on such stallions if same were offered for sale, there certainly was insufficient evidence upon which to base the verdict rendered even under the instruction given.

The judgment and order appealed from are reversed.

McCOY, J., taking no part herein.