GIFFORD et al, Respondents, v. PAYNE, Director General of Railroads, Appellant.

(199 N. W. 119.)

(File No. 5057. Opinion filed May 28, 1924.)

1. Carriers — Railroads — Live Stock Shipments — Law Prohibiting Confinement of Cattle More Than 28 Hours Held Not Involved, and Evidence Offered Thereunder Immaterial.

Where, in action for damages to live stock through lack of proper care and feeding and by improper handling during transit, defendant alleged it was necessary to stop for feed, water, and rest at a certain point, and that the contract provided that the cattle should be fed and watered at another point, Twenty-eight Hour Law (U. S. Comp. St., Secs. 8651-8654) was not involved in case, and all evidence offered thereunder was immaterial.

2. Appeal and Error—Trial—Instructions—Damages—Instruction as to Measure of Damages to Live Stock by Lack of Proper Care, Though Technically Erroneous, Held Harmless.

In action by shipper for damages caused by lack of proper care and feeding and by improper handling of live stock shipment destined to stockyards at Chicago, for immediate sale, instruction which stated measure of damages was difference in selling price of cattle at stockyards at Chicago, instead of market value, may have been technically erroneous, but was harmless, in absence of showing of any difference between market value and selling price at time and place of sale.

Appeal from Circuit Court, Davison County; HON. FRANK B. SMITH, Judge.

Action by Arthur Gifford and another, as copartners doing business under the firm name and style of Gifford Bros., against John Barton Payne, as Director General of Railroads, as Special Agent under the transportation Act of 1920 (U. S. Comp. St. Ann. Supp. 1923, § 10071¼ et seq.). From a judgment for plaintiffs, and from an order denying a new trial, defendant appeals. Affirmed.

*Ed. L. Grantham,* of Aberdeen, *C. O. Newcomb,* of Minneapolis, Minn., and *T. J. Spangler,* of Mitchell, for Appellant.

*Miller & Mitchell* and *H. G. Giddings,* all of Mitchell, for Respondents.

(1)  To point one of the opinion, Appellant cited: Penn. R. Co. v. Swift & Co., 258 Fed. 289; Webster v. Union Pac. R. Co., 200 Fed. 597; A. T. & S. F. R. Co. v. Merchants Live Stock Co., 273 Fed. 130; Mosteller v. Ry. Co. (Ia.), 133 N. W. 748; Starr v. C. B. & Q. R. Co. (Neb.), 173 N. W. 682; Beckman v. So. Pac. Co., 118 Pac. 118.

Respondent cited: Peck v. Chicago Great Western Ry. Co. (Ia.), 115 N. W. 1113; Missouri Pac. Ry. Co. v. Ault, 255 U. S. 554, 65 L. ed. 1087; Snyder v. King (Mich.), 165 N. W. 840, 1 A. L. R. 893; C. R. I & S. R. Co. v. Scott (Tex)., 156 N. W. 294; Chicago R. I. & G. Ry. Co. v. Linger (Tex.), 156 S. W. 298.

(2)  To point two, Appellant cited: Elliott v. C. M. & St. P. Ry. Co., 161 N. W. 347.

Respondent cited: 39 Cyc. 1118; 26 Cyc. 819; Berry et al v. C. M. & St. P. Ry. Co., 24 S. D. 611.

POLLEY, J.  This action was brought against John Barton Payne, as Director General of Railroads of the United States, to recover damages alleged to have been caused by lack of proper care and feeding and by improper handling of certain shipments of live stock made by plaintiffs over the Chicago, Milwaukee & Saint Paul Railroad during the time the railroads of the country were in the control of the United States government. The issues of fact and the law involved in the case are so fully and correctly stated in the following instructions given to the jury by the court, that, omitting formal parts, we set the same out in full:

"These two causes of action will be disposed of first in the charge. There is no claim made by the plaintiff for damages for delay in the shipment of these two consignments of stock, and the only question for you to consider in these two shipments is: Did the government fail to furnish proper feed for the stock at Sioux City or Savanna, or both? There is no evidence that they were not properly watered at both of these places, or that the yards at Sioux City and Savanna were not in a fit and proper condition for feeding, watering, and rest. However, it was the duty of the

government to furnish reasonably good hay for this stock both at Sioux City and Savanna, and the question is: Did it negligently fail to do so at either or both places? Negligence, in such cases as these, means a failure upon the part of the agents or servants of the government—that is, those operating the railroads—to exercise reasonable and ordinary care and diligence to furnish proper hay for the stock at either or both places, such as a person of ordinary honesty and prudence would have exercised under similar circumstances, having due regard for the welfare of the animals.

"The government was not bound to furnish the best and most wholesome quality of hay, but such as was reasonably fit and proper for the consumption of the cattle at that time. I might add here that I use the term 'hay,' because the government was not bound to furnish any other kind of feed for this particular class of cattle. They were not corn-fed cattle, and as such were not entitled to be fed upon grain during transit. Although the cattle may have been unloaded at Sioux City and Savanna at the request of the plaintiff, and held at Savanna a longer time than usual at the request of the plaintiff, yet if the defendant assumed and undertook to feed them or have them fed while they were at either or both places, and charged the plaintiff, it was its duty to furnish, or to see that reasonably suitable and proper hay was furnihsed, to the stock, and in case of failure to use ordinary care and diligence in providing such feed the defendant would be liable to the plaintiff for such damages as he sustained by reason of such failure.

"The burden of proof is upon the plaintiff to show by a fair preponderance of the evidence that the agents or servants of the government negligently failed to furnish such hay to this stock at either Sioux City or Savanna, or both. If the evidence fails to show by a fair preponderance of it that the agents or servants of the government negligently failed to furnish such hay to this stock at either place, then of course the defendant is entitled to a verdict. If, upon the other hand, the evidence does show by a fair preponderance of it that the agents or servants of the government negligently failed to furnish such hay at either or both places, then the plaintiff would be entitled to recover such loss as the failure to furnish such hay caused him.

"Upon this question the court charges you that a shipper of

live stock assumes all of the risks of the usual and ordinary delays, shocks, concussions, rough riding, and exposures incident to the transportation of such stock in the usual way, as well as all of the ordinary and usual shrinkage that is common to such shipments, and all damages or loss due to nature, weakness, or injuries of the animals to each other. The carrier is not absolutely bound to deliver the stock in good condition. It is not an insurer of stock. It is only bound to use reasonable care, caution, and prudence for the safety and well being of the animals, and it is only liable where it fails to do this, and where the shipper accompanies the stock on the trip, as is the case in all of these actions, proof of the good condition of the stock when delivered to the carrier and of their bad condition when they reached Chicago does not tend to prove that their bad condition was due to any negligence or fault of the defendant, and does not impose upon the defendant the burden of showing that it was not due to its fault or negligence; but the shipper must point out 'and prove the particuar act of negligence or fault that caused him a loss, and must show how much such negligent acts cause him to lose.

"So, to recapitulate a little, if the evidence fails to show by 'a fair preponderance of it that the agents or servants of the government were negligent in failing to furnish and provide reasonable and proper hay for these cattle at either Sioux City or Savana, you should then return a verdict for the defendant; but, if the evidence does show by a fair preponderance of it that the agents or servants of defendant negligently failed to furnish and provide reasonable and proper hay fit for the consumption of the cattle either at Sioux City or Savanna, or both, you will then determine whether such negligence caused the plaintiff any loss.

"The real measure of damages in a case of this kind, where the stock is shipped to a market for immediate sale and are sold shortly after arrival—the real measure of damages is: How much less did the stock sell for than they would have sold for if they had had proper hay on the route at Sioux City and Savanna? That is the real measure of damages. It will be for the jury to take the evidence and determine what that is for yourselves. If you find that the government negligently failed to provide fit and proper hay, as I explained to you, did that failure cause the animals to sell for less than they would have sold for if they had had proper hay at Sioux City and Savanna?

"While it is true that these two shipments of cattle were a longer time than usual in making the trip from Kennebec to Chicago, the delay was caused by the plaintiff, and at his request, at Savanna, and if being a longer time upon the road caused these animals to deteriorate or to shrink more than ordinary and usual, and caused them to sell for less than they otherwise would have sold for if delivered at an earlier date, such loss cannot be assessed against the defendant. The only damage which the plaintiff could recover is that which was caused to him by the negligent failure to furnish fit and proper hay at either Sioux City or Savanna, or both, and it will be necessary for the jury to distinguish these damages, if any, or this loss, if any, from all other losses that the plaintiff may have suffered; all other losses he must stand himself, and of course he cannot recover them from the defendant. If you find that the cattle did sell for less than they would have sold for, had they had proper hay reasonably fit for their consumption on the route, it will be for you to approximate and arrive at, as near as you possibly can from the evidence, what that loss was in each shipment—the one to Wood Bros. and the one to the Northwestern Live Stock Commission Company.

"Now with reference to the shipment of cattle from Betts to Wood Bros. at Chicago on May 16, 1919, the same rules of law as to the risks assumed by the shipper that I have given you in the Kennebec shipments apply to this shipment from Betts to Wood Bros., of Chicago. In this case there is no claim for delay in shipping the cattle. It is claimed, however, in this case, that the defendant so negligently and carelessly operated the train carrying this stock that one of them was killed and the others jarred up and shocked so that it caused them to shrink and deteriorate more than usual. It is the duty of the carrier to so manage its trains as to not injure the animals by unreasonable and unnecessary shocks and concussions. You will notice that I use the word 'unnecessary.' Necessary jars or concussions, although severe or hard, furnish no cause for complaint.

"I might illustrate that to you in this way in one instance; that is, the engineer hauling a train load of cattle may observe a dangerous place in the track, or he may observe a bunch of cattle on the track, and it might become necessary for him to apply the brakes strongly, or even what we call an emergency brake, which

would cause a severe and necessary shock. That would be a cause where a hard, severe shock would not be unnecessary; so it is unreasonable and unnecessary shocks only that the plaintiff can complain of.

"The shipper, as I said in the Kennebec shipment, assumes the risks and must bear the loss occasioned by the usual and necessary shocks, jars, and rough riding of the kind of trains, and from the inherent nature and propensities of the animals. It is only where he is damaged by shocks, jars and rough riding that are unreasonable and unnecessary that he can complain. But the fact that the owner accompanied the stock does not relieve the defendant from damages caused by the negligent handling of the train, nor does the failure of plaintiff to look over and inspect the stock along the route or make complaint relieve the defendant from liabiilty for such negligence.

"The plaintiff also claims in this action that at Perry, Iowa, the defendant negligently failed to furnish suitable facilities for feeding and watering and resting the animals, and that the cattle were deprived thereby of proper feed, water, and rest. In the contract of this shipment from Betts to Chicago there is a provision 'that in case an attendant accompanies said live stock, said attendant shall, at the shipper's expense, care for, feed, and water the stock while the same is in the possession of the railroad, and will see that all doors and openings in said car or cars are at all times so closed and fastened as to prevent the escape therefrom of any or said live stock.' Under that clause of the contract it was the duty of the plaintiff to furnish the cattle with such feed as he saw fit at Perry, Iowa. He was bound to furnish that himself, and, if he did not, he cannot complain. But, although a special contract requires the shipper to give care and furnish feed and water to the stock in transit, the carrier is still bound to afford him or his agents reasonable facilities for doing so, and it will be liable for the loss or injury resulting from its neglect to perform its duty.

"Of course the burden of proof is upon the plaintiff to show by a fair perponderance of the evidence that the agents or servants of the government so negligently operated the train that it caused unreasonable and unnecessary jars and shocks and concussions to the animals, and that that was the cause of the injury or death

of some of them.   And likewise the burden is upon him to show that through the negligence of the agents or servants of the carrier the yards at Perry, Iowa, were so unfit for the purpose of feeding, watering, and rest that the cattle were deprived of sufficient feed, water, and rest.   Negligence in a case of this kind, means a want or failure to exercise reasonable and ordinary care and prudence in providing such places to feed, water, and rest for the animals, such as a reasonably cautious man would use under similar circumstances having due regard for the welfare and comfort of the animals in transit.

"If the evidence fails to show by a fair preponderance of it that the train was so negligently operated or handled that it injured the animals or some of them by unnecessary shocks, and killed some of them by unnecessary shocks, jars, and concussions, and also fails to show that the stockyards at Perry, Iowa, by reason of the negligence of the agents or servants of the government was an unfit place to unload the cattle, and were such that the cattle were deprived of proper water, feed, and rest, your verdict should be for the defendant in this case.   If, however, on the other hand, the evidence does show by a fair preponderance of it that the train was so negligently operated that it killed or injured some of the cattle by unnecessary and unreasonable shocks, jars, and concussions, or shows that by reason of the negligence of the agents or servants of the carrier, the yards at Perry, Iowa, were an unfit place to unload the stock for feed water, and rest, and that by reason thereof the cattle were deprived of proper feed, water and rest, then your verdict should be for the plaintiff, if you find that he suffered any loss by reason of such negligence in either case.

"Here, as in the Kennebec shipments, where the shipper accompanies the stock on the trip, proof of the good condition of the stock when delivered to the carrier and of their bad condition when they reach Chicago does not tend to prove that their bad condition was due to any negligence or fault of the defendant, and does not impose upon the defendant the burden of showing that it was not due to its fault or negligence; but the shipper must point out and prove the particular acts of negligence or fault that caused him to lose.   The fact that an animal was found dead in one of the cars raises no presumption of negligence.   It must be

proven by the evidence to have been caused by some negligent acts of the carrier. Now, if you find that the animal found dead in one of the cars was killed by negligent and unnecessary rough handling of the train, the measure of damages would be the reasonable market value of the animals at Chicago, less the freight from Betts to Chicago.

"In regard to the other cattle of this shipment, the measure of damages would be exactly the same as it would be in the Kennebec shipments; that is, how much less did the cattle sell for than they would have sold for if they had been properly transported, without negligence upon the part of the carrier and proper facilities for feeding, watering, and resting furnished at Perry, Iowa? You must distinguish, as I said before, between the damage or loss or deterioration or shrinkage caused to the plaintiff by the negligent acts of the defendant, if you find there were any on the part of the defendant, from all loss or deterioration or shrinkage from other causes. All other losses he must stand himself."

[1] These instructions include practically all the contentions made by appellant. It is claimed by appellant that the trial court misconstrued the 28-hour law (sections 8651-8656, U. S. Comp. St. 1918). The law is in no wise involved in the case. Defendant alleged in his answer that it was necessary to stop for feed, water, and rest at Sioux City, and the contract provides that the cattle shall be fed and watered at Savanna. All the evidence offered by appellant relative to the facilities for feed, water, and rest at Kirkland, 60 miles beyond Savanna, or that the cattle could have been delivered at their destination within 36 hours from Sioux City, is immaterial to any issue in the case and incompetent for any purpose.

[2] Appellant claims that the court told the jury that the measure of damage, if any was the difference in the *selling price* of the cattle at the union stockyards in Chicago, instead of the *market value*. This may have been a technical error. Elliott v. C., M. & St. P. Ry. Co., 38 S. D. 371, 161 N. W. 347. But appellant could not possibly have been harmed by such error. The stock was shipped to the union stockyards for immediate sale and slaughter, and we know of no way of determining its market value, except by what it would bring in that market. It is not contended that there was any difference between the market value and the selling price at that time and place.

27—Vol. 47, S. D.

Our attention has been directed to the very recent case of Railway Co. v. Live Stock Co. (C. C. A.) 293 Fed. 987. In that case it is said:

"It is, however, the general rule of law that one whose negligence directly contributes to his injury cannot recover damages of another whose negligence substantially contributes to cause it, even though the carelessness of the latter was the more proximate or the more effective cause of it, and the ruling of the court, of which complaint is here made, was in clear violation of this established rule."

But this doctrine is not applicable to this case, because no negligence on the part of respondent is shown. The issues were all submitted to the jury on conflicting testimony, and the evidence is sufficient to sustain the findings of the jury.

The judgment and order appealed from are affirmed.

Note.—Reported in 199 N. W. 119. See, Headnote (1), American Key-Numbered Digest, Carriers, Key-No. 227(3), 10 C. J. Sec. 593; (2) Appeal and error, Key-No. 1064(1), 4 C. J. Sec. 3013.

On statutory duties of carriers of live stock with reference to care of stock during transportation, see note in 44 L. R. A. 449.

On liability of carrier of live stock for injury by unwholesomeness of water or feed furnished by carrier to live stock during transit, see note in 18 A. L. R. 1116.