## WILLER, Appellant, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.

### (210 N. W. 81.)

(File No. 5555.   Opinion filed September 7, 1926.)

1.  **Carriers—Contracts.**

    Special agreement between carrier and shipper to. transport and deliver cattle on certain date is void, unless open to all shippers alike.

2.  **Pleading—Appeal and Error.**

    Where sufficiency of complaint is raised for first time on appeal, every reasonable intendment and presumption will be given in favor of plaintiff.

3.  **Carriers—Negligence—Circumstance of Removing Engine, After Loading Portion of Cattle, and Refusal of Another Train to Complete Loading, Were Sufficient to Support Inference of Negligence.**

    In action for carrier's delay in shipment of cattle, circumstance of loading portion, and then taking engine on train going west, and neglect or refusal of east-bound train to complete loading and take cars, were sufficient to support inference of negligence.

4.  **Carriers—Damages—Measure of Damage for Carrier's Delay in Shipment of Cattle Is Difference Between Market Value at Time They Ought to Have Been Delivered and Actual Delivery. (Rev. Code 1919, § 1981).**

    In action by shipper to recover damages for negligent delay in shipment of cattle, the measure of damage under Rev. Code 1919, § 1981, is difference between market value of cattle at time and place they ought to have been delivered and their value there at time of actual delivery.

5.  **Carriers—Where Measure of Damage Was Based on Market Values, and No Evidence Was Offered to Show Market Condition, Directing Verdict for Defendant Was Proper.**

    Where measure of damage for carrier's delay in shipment of cattle was based on market values, and no evidence was offered

to show market condition, held, court was right in directing verdict for defendant.

Note.—See, Headnote (1), American Key-Numbered Digest, Carriers, Key-No. 35, 10 C. J. Sec. 290 (Anno.); (2) Pleading, Key-No. 34(7), 31 Cyc. 82, Appeal and error, 4 C. J. Sec. 2677; (3) Carriers, Key-No. 228(5), 10 C. J. Sec. 600; (4) Carriers, Key-No. 229(2), 10 C. J. Sec. 445; (5) Carriers, Key-No. 230(1), 10 C. J. Sec. 440 (Anno.).

Right of carrier to discriminate with respect to special or unusual service, see note in 12 L. R. A. (N. S.) 506; 4 R. C. L. 590.

2 R. C. L. 87; 5 R. C. L. Supp. 68.

4 R. C. L. 932; 1 R. C. L. Supp. 1242; 4 R. C. L. Supp. 299; 5 R. C. L. Supp. 262.

Appeal from Circuit Court, Jackson County; Hon. John G. Bartine, Judge.

Action by Henry Willer against the Chicago, Milwaukee & St. Paul Railway Company. From a judgment for defendant and an order denying a new trial, plaintiff appeals. Affirmed.

*Johnson & Johnson*, of Pierre, and *Magnus K. Easthouse*, of Kadoka, for Appellant.

*Ed. I. Grantham* and *H. O. Hepperle*, both of Aberdeen, and *A. G. Granger*, of Kadoka, for Respondent.

BURCH, C. This action is brought to recover damages for negligent delay in the shipment of live stock from Kadoka, S. D., to Chicago, Ill. The court instructed the jury to render a verdict in favor of defendant, entered judgment on the verdict, and plaintiff brings the case to this court on appeal from the judgment and order denying a new trial.

Appellant states for his cause of action that he requested nine cars for the shipment of cattle from Kadoka to Chicago by way of Sioux City, to be loaded at Kadoka on Friday, September 28, 1917, and delivered in Chicago Monday, October 1, 1917, with the understanding that defendant would furnish engine and help in loading; that in response to the request defendant furnished the cars, but failed to furnish engine and help for loading, or to take the cattle on its train on Friday, and delayed transporting the cattle so that they did not arrive in Chicago until the 3d of October; and that by reason thereof he was damaged in the sum of $836.53.

[1]   Respondent contends that this complaint pleads a special agreement to transport and deliver plaintiff's cattle on a certain date, and that such agreement is illegal and void and against public policy.   It is too well known to require argument that the contract which a railway company can make with a shipper is so controlled by statutes, orders of the Interstate Commerce Commission and Railroad Commissions that very little latitude is left for special agreements between shippers and railroad companies.  That such an agreement is void, unless open to all shippers alike, is well settled.   Underwood v. Hines (Mo. App.) 222 S. W. 1037; Chisago & Alton Ry. Co. v. Kirby, 225 U. S. 155, 32 S. Ct. 648, 56 L. Ed. 1033; Atchison, etc., R. Co. v. Robinson, 233 U. S. 173, 34 S. Ct. 556, 58 L. Ed. 901; Missouri, K. & T. R. Co. v. Harriman, 227 U. S. 657, 33 S. Ct. 397, 57 L. Ed 690; Chicago, R. I. & P. R. Co. v. Cramer, 232 U. S. 490, 34 S. Ct. 383, 58 L. Ed. 697; Saitta & Jones v. Pennsylvania R. Co., 179 N. Y. S. 471; Siemonsma v. Chicago, M. & St. P. Ry. Co., 158 Iowa 483, 139 N. W. 1077; State ex rel, v. Atlantic Coast Line R. Co., 52 Fla. 646, 41 So. 705, 12 L. R. A. (N. S.) 506; Engemoen v. Railway Co., 210 F. 896, 127 C. C. A. 426.

[2]   But since defendant did not demur to plaintiff's complaint, and the sufficiency of the complaint is raised for the first time in this court, we must give to the complaint every reasonable intendment and presumption in favor of plaintiff. We think the complaint may be held to state a cause of action for negligent delay in receiving transporting, and delivering such shipment of cattle.

Defendant did not introduce any testimony, but at the close of plaintiff's case moved the court to direct a verdict in its favor on the ground that the complaint and proof allege a special contract as above mentioned, which was void and against public policy; that neither the said complaint nor the proof alleges nor shows negligent delay in the transportation of the shipment in question; that the defendant is liable only for negligent delay; and for the further reason that the evidence as a whole is insufficient, because the undisputed testimony shows that plaintiff retained possession of the shipment at Kadoka, and, if any damage resulted while in his care, that such damage occurred through the fault and negligence of plaintiff, and he cannot recover dam-

ages resulting from his own negligence. This motion was granted. Plaintiff's evidence as to the cattle being ready for shipment on the regular train of defendant on Friday, the 28th, from Kadoka, is not strong, but was sufficient to present a question for the jury. The evidence tends to show that the delay at Sioux City was due to orders from the consignees, and there is but little, if any, evidence of negligent delay on the part of the railway company, after the cattle left Kadoka.

[3] However, the question of the negligence of the defendant in taking the cattle from Kadoka after furnishing cars and loading a portion of the shipment, and of the contributory negligence of plaintiff in handling the cattle after the train left without taking them was for the jury to determine. The circumstance of loading a portion and then taking the engine on a train going west, and the neglect and refusal of the east-bound train to complete the loading and take the cars, were sufficient to support an inference of negligence, unexplained or excused. If the operation of its trains required the leaving of the shipment, defendant should have shown that fact, or if the plaintiff was at fault in not having his cattle weighed, settled for, and ready for loading, his testimony to the contrary should have been met and rebutted.

[4] But respondent says, in any event, the action of the trial court was right because there is no competent evidence of damage. On the question of damage plaintiff proved an unusual shrink of about 40 pounds per head. Respondent says this is not the measure of damage; that the cattle might have sold for more on the Wednesday market in their shrunken condition than they would have sold for on Monday's market with less shrink; that the value of the cattle depended not alone upon their condition, but upon the condition of the Chicago market; that there being no evidence offered to show the condition of the Monday market, no comparison could be made between the Monday and Wednesday markets so that an intelligent computation of damage, if any, could be made. This is true, if the sole measure of damage is the depreciation in the market value of the cattle. Section 1981, R. C. 1919, provides:

"The detriment caused by a carrier's delay in the delivery of freight is deemed to be the depreciation in the intrinsic value of

the freight during the delay, and also the depreciation, if any, in the market value thereof, otherwise than by reason of a depreciation in its intrinsic value, at the place where it ought to have been delivered, and between the day at which it ought to have been delivered and the day of its actual delivery."

There was proof of an unusual shrink and of the price for which the cattle sold, and the jury might infer that their intrinsic value was lessened by the number of pounds lost multiplied by the price per pound for which such cattle sold without regard to an earlier market But is this a fair construction of the statute? If so, the carrier must indemnify the shipper for his actual loss if the market depreciates, while on a rising market the carrier must pay him damages for loss in quality or weight, although the shipper has suffered no actual loss, but has profited by the delay. Such a rule would be sure to result in much vexatious litigation. In the early development of the law the right to recover for loss occasioned by a depreciation in the market, where there was no depreciation in the quality of the goods, was questioned. However, it soon became the settled law of New York, and I think most states, that a carrier was liable for delay resulting in loss occasioned by a depreciation of the market to one shipping for the market, and it was laid down as a settled rule that the measure of damages for such delay is the difference between the market value of the goods at the time and place and in the condition it ought to have been delivered and its value there at the time and in the condition of its actual delivery. Ward v. N. Y. Central R. Co., 47 N. Y. 29, 7 Am. Rep. 405; Sherman v. Hudson R. R. Co., 64 N. Y. 254.

Section 1981 first came into our laws as section 1857 of the Civil Code of 1865-66, and appeared as section 1964 in Rev. Civ. Code 1877, and was taken from section 1857 of the final report of the Field Civil Code of the New York Legislature in 1865. A. G. Sedgwick, of the New York bar, in his report to a committee of the Bar Association commented on this particular section as follows:

"No such rule as this has even been laid down by any court. For a carrier's delay, the rule of damages in this state is well settled to be the difference between the market value of the goods at the time and place it ought to have been delivered and its value

there at the time of its actual delivery. The commissioners mean that the condition in which the goods arrive is also to be taken into the account. But this is done by the rule as it stands. The value of damaged goods under the rule is the market value as affected by the injury. 'Intrinsic' value is something that different juries would construe very differently, and could not fail to lead to much confusion and uncertainty." Damages in the Code, A. G. Sedgwick (New York, Baker & Godwin, 1885) p. 27.

[5] What may be the rule in case of goods not intended to be sold or placed upon the market, need not be decided, but for goods shipped to market, for immediate sale thereon, as in this case, the true measure of damage under the above-quoted section of our Code is determined by a comparison of the two markets as above indicated, and, when that is done, the loss by depreciation in the intrinsic value of the goods is included and computed thereby. There being no evidence of the market value of the cattle on an earlier market than the one on which they were sold, there was no evidence upon which to base a verdict of the jury in favor of appellant, and the court was right in directing a verdict for defendant.

The judgment and order appealed from are affirmed.

DILLON J., not sitting.