TRIBBY, Respondent, v. CHICAGO & NORTH WESTERN RY. CO., Appellant.

(252 N. W. 20.)

(File No. 7365. Opinion filed December 29, 1933.)

*Churchill & Benson,* of Huron, and *Atwater & Helm,* of Sturgis, for Appellant.

*A. W. W. Devers,* of Sturgis, and *Dan McCutchen,* of Belle Fourche, for Respondent.

ROBERTS, J. Plaintiff brought this action to recover damages for breach of contract and injury in shipment of five carloads of horses and mules from Sturgis, S. D., to South Omaha, Neb. The complaint, in substance, alleges that the defendant, when it received the horses and mules for shipment, knew that the plaintiff intended to enter them at the regular auction sale to be held on the 30th day of September and the 1st day of October, 1929, at South Omaha; that the stock cars were ordered by the plaintiff with the intention of loading the animals for shipment on September 26, 1929; that by reason of instructions received by the defendant's station agent at Sturgis from the train dispatcher at Chadron, Neb., which were conveyed to the plaintiff, to the effect that, if the horses and mules were loaded for shipment on September 27th, they would be forwarded to destination on a nonstop train and would arrive at their destination within thirty-six hours from the time they left Sturgis and in ample time to be entered at the regular horse and mule sale, plaintiff in accordance with such agreement loaded and delivered for shipment his horses and mules on the morning of the 27th; that notwithstanding such agreement the defendant failed to transport the animals on a nonstop train and to have them at the place of destination at the time agreed upon; that the cars in which the horses and mules were shipped while in transit were jerked and bumped in such a violent manner that one horse in the shipment was killed and others were seriously injured; that as a result of the delay in transit the horses and mules did not reach South Omaha in time for the sale; and that by reason of such delay and negligent handling the plaintiff was damaged in the sum of $2,624.50. The jury returned a verdict for the sum of $1,250, upon which judgment was rendered, and from the judgment and order denying motion for new trial, defendant appeals.

Among the errors relied upon as grounds for reversal are (1) the admission of evidence as to alleged damage resulting from

delay in transportation, and (2) the insufficiency of the evidence to sustain the verdict.

The sale referred to was conducted by the Omaha Horse & Mule Commission Company, and the particular sale for which the shipment was made commenced Monday morning, September 30th. Mules were sold on Monday, and sale of horses did not commence until the forenoon of the following day. Plaintiff claimed no damages for delay in shipment of or injury to the mules included in the consignment. The shipment arrived at its destination early Monday morning, more than twenty-four hours before the commencement of the sale of horses. Evidence was admitted of an established rule of the commission company to offer horses for sale in the order in which they arrived at the market; that there was an unusually large number of horses at this particular sale; that by reason of such rule plaintiff's horses which were in condition to be offered for sale were not sold until Thursday; thirty-two head of horses injured in shipment were carried over and sold at a sale held two weeks later; and that during the interval such horses were kept in the barns of the commission company and there contracted a disease commonly known as barn fever. Witnesses for the plaintiff testified that horses sell better on the opening days of the sale; that buyers are more numerous; that when buyers have partially filled their requirements there is less competition in bidding; and that at this particular sale horses were sold on Thursday from $10 to $15 per head less than horses of equal quality sold earlier at the sale.

Plaintiff was permitted to testify that on Wednesday afternoon while the plaintiff was sorting the horses and mules and preparing for shipment, the station agent at Sturgis informed the plaintiff that he had received from the train dispatcher at Chadron, Neb., a telegram which read: "Load the five horses Friday. Will get through if loaded for No. 40 that date." The train dispatcher testified: "When I sent that telegram it was my opinion, my idea, that the stock would go through to its ultimate destination without unloading, if it was loaded for train No. 40. I figured that under ordinary circumstances that stock loaded on No. 40 on Friday would go through. Previously it had gone through, and under ordinary circumstances it went through."

Counsel for the defendant interposed objections to this line

of testimony on the ground that it was not competent for the parties to enter into a special contract under the facts appearing in this record. At the close of plaintiff's evidence defendant again asserted its position as follows: "At this time we move the court to withdraw from the jury and to instruct the jury when it gives its instructions, to entirely disregard any testimony in the case as to alleged damage to plaintiff arising out of the fact that his horses and mules were not offered for sale at the open market of the Omaha Horse & Mule Commission Company on Monday the 30th day of September, and none of the horses were offered for sale on the following day, Tuesday, or the following day, Wednesday, and were not offered for sale until Thursday, for the reason that it appears from the undisputed evidence that the entire shipment of animals were at the place of sale Monday morning, more than two hours before the time set for the sale to commence and before the sale actually did begin, and the defendant is not in any way responsible or liable for and has no control over the rules of the Commission Company controlling the order in which sale is made, and against this defendant the plaintiff is entitled to no damages for the fact that the animals were not sold until after a large number of other animals had been sold and many buyers had satisfied their requirements and gone home and the market was consequently poorer on the day the plaintiff's horses were offered for sale."

The motion was denied. The trial court, having denied requested instructions to the effect that the plaintiff could not recover damages for the breach of a carrier's special agreement to expedite the shipment, instructed the jury in this connection as follows: "The plaintiff claims in his complaint two elements of damage against the defendant, one for the alleged delay in the transportation of said horses to the said market and the other for the alleged injury by the defendant to said horses in the said transportation of the same. In this case there is no competent testimony tending to show unnecessary delay by the defendant under its contract with plaintiff for the shipment of these horses. This shipment of these horses is what is known in law as interstate commerce, that is, a shipment from one state to another. and the defendant company in carrying out the shipment is compelled to observe the provisions of the laws of Congress made and governing such shipments and in this action the evidence shows that the defendant company trans-

ported said horses in accordance with its contract with plaintiff and such laws, and is guilty of no negligence on account of delay in such shipment. And in the consideration of this case you cannot allow any damages for any alleged delay in said shipment,, and all evidence submitted here before you in relation to any claimed damage on account of any alleged delay is stricken out and withdrawn from your consideration. And in determining any damages in this case in case you determine there are any damages as hereinafter instructed you will give no consideration to any such evidence relating to delay in reaching said market or the delay in regard to the day on which said horses were sold, or the difference in price that was claimed the said horses would have brought on Monday or Tuesday than what they brought on Thursday or later."

No exception was taken to this instruction given by the court. Defendant, however, contends that the court erred in admitting evidence as to the alleged damages resulting from delay in transportation and that such error was not cured by the instruction of the court to disregard such evidence. The general rule that, if evidence which may have been admitted in the course of the trial be withdrawn from the consideration of the jury by direction of the court, such withdrawal cures any error which may have been committed by its introduction is not without exceptions, but we need not here determine whether the admission of this evidence was so harmful and of such a nature that its effect could not be removed by an instruction of the court.

■ ■ A careful consideration of the evidence brings us to the conclusion that the evidence is insufficient to sustain the verdict of the jury. Plaintiff testified: "I was also there and observed all the sales that took place on Thursday. I am well acquainted with the market and with most of the buyers that are there. On Monday when the sale opened I would say there were one hundred and fifty buyers there. Some of them perhaps more extensive than others. Some had come to buy only one horse or one team. Others are regular shippers. On Thursday there were very few buyers there. * * * That is an open market. The prices that prevail fix the prices in that community. Basing my answer on my observation and knowledge of the market I would say that the reasonable market value of the horses on Monday and Tuesday

provided the horses were in marketable condition was $65 a head. * * * The reasonable market value of those thirty-two animals, injured as I found them to be when they arrived here at Omaha, was $23.50 a head. My claim is for physical damage and delay, both. I claim the delay was responsible for them not being there in shape to sell Monday or Tuesday, I made a distinction between physical and the damage of being late on the market. I didn't figure that out to say which was the most. * * * The delay was responsible for the damage, that was my idea. I never claimed that the damage to these animals was all physical. I haven't divided it up in dollars and cents." The testimony of the plaintiff and other evidence upon the amount of damage sustained include the element of delay. To sustain the verdict, the evidence must be sufficient to have enabled the jury, disregarding the evidence withdrawn from its consideration by the instruction of the court, to make an award.

Counsel for plaintiff urges that in every contract for shipment there is an implied condition binding the carrier to transport within a reasonable time, and cite Elliott v. Chicago, M. & St. P. Ry. Co., 38 S. D. 371, 161 N. W. 347, in support of such contention. Such claim of damage is not presented by this record. The allegations of the complaint are for breach of special contract, and are not based upon the carrier's liability for negligence in not transporting and delivering within a reasonable time. Chicago & A. R. Co. v. Kirby, 225 U. S. 155, 32 S. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501. A brief quotation from Willer v. Chicago, M. & St. P. Ry. Co., 50 S. D. 319, 210 N. W. 81, will indicate the applicable principle: "Respondent contends that this complaint pleads a special agreement to transport and deliver plaintiff's cattle on a certain date, and that such agreement is illegal and void and against public policy. It is to well known to require argument that the contract which a railway company can make with a shipper is so controlled by statutes, orders of the Interstate Commerce Commission and Railroad Commissions that very little latitude is left for special agreements between shippers and railroad companies. That such an agreement is void, unless open to all shippers alike, is well settled."

The foregoing rule is not opposed in principle to Elliott v. Chicago, M. & St. P. Ry. Co., supra, wherein this court sustained

the right of recovery for failure to transport within a reasonable time.

The evidence as to the alleged damage caused by delay is so interwoven and connected with evidence as to injuries caused by negligent handling that it was not possible for the jury, though it endeavored to comply with the instruction of the court, to make a separation. Other assignments of error relate to questions which will not likely arise upon a second trial and need not be considered.

Judgment and order appealed from are reversed.

RUDOLPH, P. J., and CAMPBELL and WARREN, JJ., concur.

POLLEY, J., absent and not sitting.